J-E02010-14

2014 PA Super 201

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANTHONY D. PANDER, | |
| Appellant | No. 3478 EDA 2012 |

Appeal from the PCRA Order December 17, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009831-2008

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN, ALLEN, OTT, WECHT, STABILE, and JENKINS, JJ.

OPINION BY BOWES, J.:                        **FILED SEPTEMBER 17, 2014**

Anthony Pander appeals from the order entered December 17, 2012, in which the court denied his first counseled petition for post-conviction relief filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541-9546.  We affirm.

This case involves the killing of Andreas Gabrinidis, Appellant's brother-in-law.  Appellant, his sister Georgianna Pander,[1] and Georgianna's boyfriend, Brian Dingler, were celebrating New Year 2008 at Dingler's residence.  Georgianna Pander informed Appellant that she was upset with the victim, causing Appellant to become extremely angry.  As a result,

---

[1] Georgianna Pander was married to the victim, but they were separated.

Appellant exited the residence and entered the driver's seat of his car.[2] Dingler followed Appellant at the behest of his girlfriend and entered the front passenger seat of the vehicle in an attempt to calm Appellant down. However, Appellant proceeded to drive his car, with Dingler as his passenger, to Mr. Gabrinidis' home, which was fourteen miles away. Upon arriving at Mr. Gabrinidis' house, Appellant entered the home. The men began to argue and wrestle on Mr. Gabrinidis' enclosed porch. Mr. Gabrinidis attempted to flee, running down the street screaming for help and banging on his neighbors' doors. Appellant, however, continued his attack, knocking down Mr. Gabrinidis and assaulting him as he lay in the street.

Several neighbors of the victim, who were familiar with Appellant, witnessed the attack. Kimberly Bumpess heard screams from outside her window and observed Mr. Gabrinidis fleeing from his home. According to Ms. Bumpess, Mr. Gabrinidis ran to a neighbor's house screaming for assistance. Ms. Bumpess's son, Shakur Bumpess, then fourteen, also witnessed the attack. Both Ms. Bumpess and her son saw the assailant attacking the victim before entering the driver's side door of a white car. Police later showed Mr. Bumpess a family photograph depicting Appellant, but he failed to identify Appellant as the person he saw assaulting the victim. Mr. Bumpess, nonetheless, subsequently identified Appellant at trial.

---

[2] The car was registered to Appellant's mother.

A third neighbor, who could not conclusively identify Appellant, witnessed the attack and told police that the assailant entered the driver side door of a vehicle before fleeing.

Upon re-entering his car, Appellant informed Dingler that Mr. Gabrinidis was "not going to bother my sister again." N.T., 12/1/09, at 229. Appellant then drove back to Dingler's residence. Prior to going to bed, Dingler observed Appellant scrubbing his pants and hands in a bathroom. Police arrived on the scene of the attack and found Mr. Gabrinidis bleeding from his chest. Mr. Gabrinidis died as a result of multiple stab wounds. One stab wound punctured his heart and another his liver. According to the medical examiner, either injury could have caused his death.

A jury found Appellant guilty of first-degree murder and possession of an instrument of crime ("PIC") on December 7, 2009. On that same date, the court sentenced Appellant to life imprisonment without parole for the murder charge and a concurrent term of imprisonment of two and one-half to five years for the PIC count. Appellant did not file a post-sentence motion, but he did file a *pro se* notice of appeal. The court appointed counsel, and this Court affirmed. **Commonwealth v. Pander**, 24 A.3d 454 (Pa.Super. 2011) (unpublished memorandum). Appellant did not seek a petition for allowance of appeal.

However, Appellant timely filed the underlying *pro se* PCRA petition in this matter, which was docketed on May 23, 2011. Thereafter, he submitted

an amended *pro se* petition on July 13, 2011. The PCRA court appointed counsel. Counsel filed an amended petition on January 20, 2012. The Commonwealth filed a response on August 7, 2012, seeking dismissal. Appellant responded to that motion on August 13, 2012. The PCRA court issued a notice of dismissal pursuant to Pa.R.Crim.P. 907 on November 19, 2012. Appellant did not file a response to that notice, and the PCRA court entered its final order on December 17, 2012. This timely appeal ensued.

The PCRA court directed Appellant to file and serve a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied, and the court authored its opinion in support of its order. A divided panel of this Court, with this author dissenting, affirmed in part and reversed in part, and remanded for additional proceedings. Both parties sought *en banc* review. This Court granted the Commonwealth's request. The matter is now ready for our consideration.

Appellant presents the following issues for our review.

    I.    Is the appellant entitled to post-conviction relief since he was rendered ineffective assistance of trial counsel and appellate counsel?

        A. Is the appellant entitled to post-conviction relief as a result of the ineffectiveness of appellate counsel for failing to raise in the direct appeal the issue of the trial court's refusal to remove juror no. 7 and substitute an alternate juror?

        B. Is the appellant entitled to post-conviction relief as a result of the ineffectiveness of appellate counsel for failing to raise in the direct appeal the issue of the trial court's denial of the appellant's motion for a mistrial

following a question by the prosecutor suggesting to the jury that the appellant had a burden to produce evidence?

C. Is the appellant entitled to post-conviction relief as a result of the ineffectiveness of trial counsel for failing to request the trial court for a ***Kloiber***[3]instruction as to Commonwealth witness Shakur Bumpess?

D. Is the appellant entitled to post-conviction relief as a result of the ineffectiveness of trial counsel for failing to present evidence and argument to prove that someone other than the appellant committed the murder?

E. Is the appellant entitled to post-conviction relief as a result of the ineffectiveness of trial counsel for failing to interview and present the testimony of Philip DeLuca, Eleftheria Gabranidias, [sic] Rosemarie Pander and Charlene Pander as to the contentious relationship Brian Dingler had with the victim and that Georgianna Pander would instigate fights between the victim and Dingler?

F. Is the appellant entitled to post-conviction relief as a result of the ineffectiveness of trial counsel for failing to request the Commonwealth to test or make arrangements for the testing of the blood found in the appellant's car?

Appellant's brief at 4-5.

Our review in PCRA matters is guided by the following principles. We consider the record "in the light most favorable to the prevailing party at the PCRA level." ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). This review is limited to the evidence of record and the factual findings of the PCRA court. ***Id***. We afford "great deference to the factual

---

[3] ***Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954).

findings of the PCRA court and will not disturb those findings unless they have no support in the record." *Id.* Accordingly, as long as a PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its ruling. *Id*. Nonetheless, where the issue pertains to a question of law, "our standard of review is *de novo* and our scope of review is plenary." *Id.*

Each of Appellant's claims implicates the effectiveness of counsel. We comprehensively outlined the law regarding such claims in **Commonwealth v. Stewart**, 84 A.3d 701 (Pa.Super. 2013) (*en banc*). Therein, we set forth:

> "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." **Commonwealth v. Chmiel**, 612 Pa. 333, 30 A.3d 1111, 1127 (2011). Where the petitioner "fails to plead or meet any elements of the above-cited test, his claim must fail." **Commonwealth v. Burkett**, 5 A.3d 1260, 1272 (Pa.Super. 2010).
>
> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. **See Commonwealth v. Jones**, 583 Pa. 130, 876 A.2d 380, 385 (2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim ..., he or she will have failed to establish the arguable merit prong related to the claim"). Whether the "facts rise to the level of arguable merit is a legal determination." **Commonwealth v. Saranchak**, 581 Pa. 490, 866 A.2d 292, 304 n. 14 (2005).
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of

success. ***Commonwealth v. Colavita***, 606 Pa. 1, 993 A.2d 874 (2010). Counsel's decisions will be considered reasonable if they effectuated his client's interests. ***Commonwealth v. Miller***, 605 Pa. 1, 987 A.2d 638 (2009). We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken. ***Id***. at 653.

"Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. ***Commonwealth v. Steele***, 599 Pa. 341, 961 A.2d 786, 797 (2008). A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.' ***Commonwealth v. Rathfon***, 899 A.2d 365, 370 (Pa.Super. 2006)." ***Burkett***, ***supra*** at 1272; ***Strickland v. Washington***, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

***Stewart***, ***supra*** at 706-707.

Appellant's initial claim is that appellate counsel was ineffective for failing to raise on appeal a preserved challenge to the continuation of juror number seven sitting on the jury after she became upset over viewing a photograph of the deceased. Specifically, during the testimony of a medical examiner, juror number seven required a break after observing pictures of the victim. She informed the trial court that the photographs reminded her of her own husband, who had died the prior year, and asserted that the photographs were too graphic. The court inquired whether she could remain impartial, and notwithstanding her emotional reaction, she twice indicated that she could. The trial court directed that no additional photographs be shown. Trial counsel asked that the court seat an alternate juror, but the court denied that request. Appellate counsel, who was not trial counsel, did not raise this issue on direct appeal.

Relying on case law discussing juror challenges for cause, Appellant contends that, since the juror became so upset over viewing the photographs that she had to exit the courtroom, she should have been removed. In his view, prejudice is to be presumed based on the juror's reaction to the photographic evidence and because she was still mourning the loss of her husband.

The Commonwealth responds that because the juror stated that she could be fair and impartial, the trial court did not err. It maintains that appellate counsel could not be ineffective for failing to present this issue on direct appeal. The PCRA court set forth that the juror did not discuss the photographs with the other jurors after she became upset, provided that she could remain fair and impartial, and was questioned by trial counsel. Accordingly, it reasoned that the juror was not unable or disqualified from performing her duty, **see** Pa.R.Crim.P. 645, and appellate counsel could not be ineffective for declining to pursue the issue.

Recently, in **Commonwealth v. Hale**, 85 A.3d 570 (Pa.Super. 2014) *allowance of appeal granted on other ground*, ___ A.3d ___ (Pa. 2014) (filed July 2, 2014), this Court analyzed cases discussing the law regarding the dismissal of jurors for cause. Therein, we noted that Pennsylvania courts have distinguished between situations where a juror is presumed biased and cannot be rehabilitated by questioning from the court, and those jurors who through questioning indicate that they can be fair and impartial. While **Hale**

and the cases discussed therein involved juror challenges prior to trial, we find the discussion therein apt in light of Appellant's contention that the juror should have been presumed prejudiced.

The **Hale** Court quoted **Commonwealth v. Colon**, 299 A.2d 326 (Pa.Super. 1972), which set forth that

> challenges for cause should be granted: (1) when the potential juror has such a close relationship, be it familial, financial or situational, with parties, counsel, victims, or witnesses, that the court will presume the likelihood of prejudice; and (2) when the potential juror's likelihood of prejudice is exhibited by his conduct and answers to questions at [v]oir dire.

**Colon**, **supra** at 327 (footnote omitted).

In the first situation, our standard of review has been labeled by this Court as ordinary. **Colon**, **supra** at 327-328 ("In the former situation, the determination is practically one of law and as such is subject to ordinary review."); **but see Commonwealth v. Black**, 376 A.2d 627 (Pa. 1977) (trial court's decision to discharge juror who was the sister of a defense witness evaluated under abuse of discretion standard); **Commonwealth v. Briggs**, 12 A.3d 291, 332-333 (Pa. 2011) ("A trial court's decision regarding whether to disqualify a juror for cause is within its sound discretion and will not be reversed in the absence of a palpable abuse of discretion."). It is apparent that what this Court has meant by indicating that our standard of review is ordinary is that, as a matter of law, it is error to allow a juror to sit and take part in final deliberations when he or she has a close relationship to certain interested individuals involved in the case. It

- 9 -

is nonetheless clear that where the relationship between the juror and a party, counsel, victim, or witness is not a close relationship, we evaluate a trial judge's decision to remove or not remove the juror under an abuse of discretion standard. **Colon**, **supra**; **see also Commonwealth v. Johnson**, 445 A.2d 509, 512 (Pa.Super. 1982); **Commonwealth v. Lesko**, 15 A.3d 345, 413 (Pa. 2011).[4]

Instantly, the juror's conduct is at issue in determining potential prejudice. Accordingly, we decline to view the juror as *per se* prejudiced. Indeed, we do not view becoming upset over a photograph of a murder victim as indicating prejudice. That the juror was disturbed by pictures of the victim because it brought back memories of her recently deceased husband does not alone indicate an inability to consider the evidence impartially. Here, had appellate counsel raised the issue on direct appeal, we would have reviewed the issue under our abuse of discretion standard. In this respect, where the trial court was satisfied by the juror's response that he or she could remain fair and the trial court has had the opportunity to view the juror in question, we do not lightly reconsider its decision. Since the juror repeatedly stated that she could remain fair and impartial and was

_____

[4] The Court in **Commonwealth v. Johnson**, 445 A.2d 509 (Pa.Super. 1982), recognized that there may exist situations where the two categories discussed in **Commonwealth v. Colon**, 299 A.2d 326 (Pa.Super. 1972), intermingle. We are also cognizant that the abuse of discretion standard encompasses errors of law.

questioned by trial counsel and the court, appellate counsel was not ineffective in not raising this issue on direct appeal.

Appellant's second challenge is to appellate counsel's failure to argue that the trial court erred in denying a motion for a mistrial after the prosecutor asked a detective if the defense could have tested evidence to determine if it was blood. In this regard, police, pursuant to a warrant, seized and searched Appellant's car. As part of this process, photographs were taken. Police did not observe any blood in or on the vehicle, and remarked that there was a small stain that appeared to be from ketchup or sauce on the passenger seat. After police processed the vehicle, they returned it on the same day to Appellant's mother. Six days later, a defense investigator took pictures of the car. One picture contained what appeared to be blood on the inside passenger door. The investigator was deceased at the time of trial.

During direct examination of Detective David Baker, the Commonwealth asked about the respective stains. The following exchange occurred.

Prosecutor: When you processed the car, did that stain appear to be blood?

A: No, it did not.

Prosecutor: What about it made it not appear to be blood?

A: It looks like it could be sauce or ketchup. It had a slight glaze, blood does not when it's drying.

Prosecutor: Is that consistent with what you see on the door there or not?

A: On the door it looks like obvious blood. I mean, it's the way blood looks when it's smeared and there is one drop there.

Prosecutor: If you thought there was blood on the seat, what would you have done?

A: For that portion, I would have cut the seat and submitted it.

Prosecutor: Just like you can submit things for test, is the Defense entitled to that as well?

A: Yes.

Prosecutor: Did any attorney on behalf of [Appellant]

Trial Counsel: Objection.

Court: Sustained.

A. No.

Court: Sustained. Strike the answer.

N.T., 12/2/09, at 138-139.

Appellant did not move for a mistrial at this juncture. However, on redirect, another exchange occurred regarding the purported blood from the investigator's photograph.

Prosecutor: Do you know for a fact what is in Defenses' photograph [is] blood?

A: No, I cannot.

Prosecutor: Can it be determined what it is?

A: Yeah, if it's sent to our criminalistics laboratory and analyzed.

- 12 -

> Prosecutor: And you're not aware of any request that was made by the Defense to do that?
>
> Trial Counsel: Objection.
>
> Court: Sustained.

N.T. 12/2/09, at 141.

Again, trial counsel did not immediately move for a mistrial. Nonetheless, after the court took a break following the presentation of several other witnesses, counsel requested a mistrial on the grounds that the Commonwealth was attempting to shift the burden of proof.[5] Appellate counsel included this challenge in his Pa.R.A.P. 1925(b) concise statement, but abandoned the issue before this Court.

Appellant now argues that this questioning infringed upon his right to remain silent during trial, suggested that he had to test the blood evidence, and improperly shifted the burden of proof. Discussing case law regarding statutes that were held to have impermissibly shifted the burden of proof to a defendant, *see Commonwealth v. Butler*, 760 A.2d 384 (Pa. 2000) and

_____

[5] During closing statements, trial counsel objected to a remark by the prosecutor that she was not "the only person that's allowed to [test the blood], the Defendant has no burden. I have all the burden to prove him guilty beyond a reasonable doubt, but that doesn't mean that he can't . . . ." N.T., 12/3/09, at 53. The objection was sustained and trial counsel moved for a mistrial. Appellant does not reference this exchange or challenge appellate counsel with respect to this portion of the trial. The trial court did indicate that the Commonwealth was improperly attempting to shift the burden of proof, and instructed the jury to disregard the prosecutor's comment.

*Commonwealth v. Williams*, 733 A.2d 593 (Pa. 1999), Appellant posits that it is immaterial that the questions were not answered or that the jury was given a general instruction on the burden of proof.

The Commonwealth counters first that the questioning was directed at refuting Appellant's suggestion that police were "negligent in not testing the 'blood' on the door." Commonwealth's brief at 17. It continues that the prosecutor was responding to evidence that the defendant had presented, and not shifting the burden of proof. Furthermore, it notes that the objected to questions were not answered or stricken and submits that Appellant has not provided "a single case in which a litigant obtained a new trial on the basis of an unanswered question." *Id*. at 19. Citing a string of cases, the Commonwealth contends that a mistrial is not warranted where a witness does not answer a question. *Id*. (citing *Commonwealth v. Bridges*, 757 A.2d 859, 879 (Pa. 2000); *Commonwealth v. Tilley*, 595 A.2d 575, 580 (Pa. 1991); *Commonwealth v. Shotwell*, 717 A.2d 1039, 1044 (Pa.Super. 1998); *Commonwealth v. Fielder*, 612 A.2d 1028, 1036 (Pa.Super. 1992); *Commonwealth v. Hoffman*, 447 A.2d 983, 986 (Pa.super. 1982); *Commonwealth v. Waters*, 417 A.2d 226, 228 (Pa.Super. 1979)).

Lastly, the Commonwealth posits that the jury was repeatedly instructed that a defendant bears no burden of proof, was told that counsel's statements are not evidence, and that jurors are presumed to follow a court's instructions. The PCRA court reasoned that appellate counsel could

not be ineffective because trial counsel's objections had been sustained, and there was nothing for the jury to consider.

It is well settled that the Commonwealth bears the burden of proving each element of the crimes charged beyond a reasonable doubt.  Further, a defendant is not required to advance any evidence in support of his defense.  In addition, the Fifth Amendment provides in relevant part that no person "shall be compelled in any criminal case to be a witness against himself[.]"  U.S. Const. amend. V.  Similarly, but not identically, Article I, § 9 of the Pennsylvania Constitution reads in pertinent part that one "cannot be compelled to give evidence against himself[.]"  At the time of ratification of the respective constitutions, to be a witness and to give evidence were considered synonymous and both terms, under a plain meaning interpretation, applied to more than trial testimony.  ***See United States v. Hubbell***, 530 U.S. 27, 51 (2000) (Thomas, J., concurring).  In fact, the right prohibited compelling a person to produce incriminating physical evidence.  ***Id***.; ***Boyle v. Smithman***, 23 A. 397, 398 (Pa. 1892); ***but see Fisher v. United States***, 425 U.S. 391 (1976) (incriminating physical evidence may be compelled).

Appellant has failed to meaningfully develop his claim regarding implication of his constitutional right against self-incrimination.  Thus, that aspect of his argument is waived.  Further, Appellant's burden-shifting position does not entitle him to relief.  The grant of a mistrial is an extreme

remedy. *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013). The trial court herein sustained counsel's objections and the objected to evidence was not admitted. That the trial court did not give an instruction on the Commonwealth's burden of proof immediately following the objections is of little moment where the objections did not occur in a timely fashion and it correctly instructed the jury during its final instructions regarding the appropriate burden of proof.[6] Since the trial court did not err in declining to declare a mistrial, appellate counsel cannot be ineffective for not arguing that issue on appeal.

Next, Appellant avers that trial counsel was ineffective in failing to request a *Kloiber* instruction as to Shakur Bumpess' identification testimony. "A *Kloiber* instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have an opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions." *Commonwealth v. Sanders*, 42 A.3d 325, 332 (Pa.Super. 2012).

In the instant case, Mr. Bumpess told police on the night of the incident that the person who attacked the victim and entered the driver's

---

[6] Appellant does not allege that trial counsel was ineffective in failing to request a mistrial immediately or seek a curative instruction following counsel's objections. Nevertheless, such a claim would fail for the same reasons his actual claim falters.

side of a car before fleeing looked like Appellant. However, when shown a family picture that included Appellant, Mr. Bumpess identified a different person. In contrast, at trial, Mr. Bumpess identified Appellant, and explained that Appellant's appearance was substantially different from that depicted in the family photograph. Trial counsel did not request a ***Kloiber*** instruction.

The trial court, nonetheless, provided the following instruction relative to identification.

> Now, throughout the trial you hear testimony on identification. And in the testimony of Shakur Bumpess and Kimberly Bumpess, they identified the person committing the crimes. In evaluating the testimony[,] in addition to the other instructions I'll give you later for judging the testimony of witnesses[,] you should consider the additional following factors.
>
> Did the witness have a good opportunity to observe the perpetrator of the offense? Was there sufficient lighting for them to make their observations? Were they close enough to the individual to note their facial and other physical characteristics as well as clothing at the time of the incident? Have they made prior identification of the Defendant as a perpetrator of these crimes at any of the proceedings? Was their identification positive or was it qualified by any hedging or inconsistencies? During the course of this case did the witness identify anyone else as the perpetrator? And in considering whether or not to accept the testimony of Shakur Bumpess and Kimberly Bumpess, you should consider the circumstances under which the identifications were made.

N.T., 12/3/09, at 62-63.

Appellant argues that because Mr. Bumpess misidentified another person in the family photograph as the assailant, and his mother did not know Appellant well, counsel was derelict in failing to secure an instruction

that the jury receive Mr. Bumpess' testimony with caution. In leveling this aspect of his argument, Appellant relies on **Commonwealth v. Simmons**, 647 A.2d 568 (Pa.Super. 1994), and **Commonwealth v. McKnight**, 453 A.2d 1 (Pa.Super. 1982). In **Simmons**, the Commonwealth appealed the grant of a new trial after the litigation of a post-trial motion alleging ineffective assistance of trial counsel for not seeking a **Kloiber** instruction. Over a dissent, the **Simmons** Court determined that counsel was ineffective. The pertinent facts of **Simmons** were that, at a preliminary hearing, a witness testified to seeing the defendant and another individual flee from a shed door. In contrast, at trial that witness indicated that he had been mistaken and he saw the defendant and another man exit a side door of the property. An investigator for the defense testified that the witness could not have observed someone leaving from the shed door from the area where the witness asserted he was standing. The **Simmons** Court ruled that **Kloiber** was implicated because there was a question as to whether the witness could have observed the perpetrator from his position.

Similarly, in **McKnight**, this Court addressed an ineffectiveness claim on direct appeal regarding an identification instruction. There, three men robbed a bar. The only testimony implicating the defendant was from a witness driving home from work. He testified that he saw three men exiting the bar and remove their masks. The witness provided that he saw one man with a shotgun, that it was broad daylight, and he saw the men from behind

at approximately twenty feet.  We reasoned that the record demonstrated that the witness did not have an ideal opportunity to observe the defendant and "never saw more than a profile of any of the three." **McKnight**, **supra** at 2.

Despite Mr. Bumpess' prior misidentification, the Commonwealth replies that Appellant would not have been entitled to a **Kloiber** instruction. In support, the Commonwealth repeats the PCRA court's rationale and highlights that Mr. Bumpess knew Appellant, "and had ample opportunity to observe him during his attack of the victim."  Commonwealth's brief at 21. While acknowledging Mr. Bumpess's previous misidentification, it submits that this fact was a result of Appellant's change in appearance.  In the view of the Commonwealth and PCRA court, **Commonwealth v. Rozplochi**, 561 A.2d 25 (Pa.Super. 1989), demonstrates that a **Kloiber** charge was not required because Appellant's change in appearance caused the misidentification.  In **Rozplochi**, this Court discussed an ineffectiveness claim based on trial counsel's failure to request a **Kloiber** instruction. Therein, the defendant robbed two women at the same time.  The women observed the assailant for approximately ten minutes in a twelve-by-eight-foot area that was well lit.  Each woman separately selected the defendant from an initial photographic array, but indicated that the robber looked older.  The initial array depicted the defendant ten years earlier.

Police then separately provided the women with a second array on a later date. This array contained a photograph of the defendant taken six months before the robbery. The women did not identify the defendant, but did not misidentify another person. A third array was shown separately to the women several weeks later. Both witnesses immediately selected the defendant. The women testified at trial that they were positive that the defendant was the culprit. We ruled that the failure to select the defendant in the second photographic array did not warrant a *Kloiber* charge where both women chose the defendant out of two different arrays and had ample opportunity to observe him up close.

We disagree that *Rozplochi* is controlling. The facts of that matter are distinguishable based on the lighting, area, and time period the witnesses had for observation. Moreover, there was not a misidentification and the witnesses correctly selected the defendant from two other arrays. Nonetheless, the Commonwealth has alternatively argued that the trial court gave an instruction that was substantially similar to a *Kloiber* instruction. Thus, it reasons that Appellant cannot establish actual prejudice. We agree with this latter assertion.

Unlike *Simmons* and *McKnight*, the trial court in this case instructed the jury regarding identification inconsistencies. Importantly, it directed the jury to consider whether the witnesses had identified another person in the past in considering Mr. Bumpess' testimony. Although the trial court did not

use the magic words that the jury must receive the identification evidence "with caution," the modified **Kloiber** instruction adequately alerted the jury of the potential problems with that testimony. Moreover, Brian Dingler identified Appellant as the attacker, as did Ms. Bumpess, and a third eyewitness set forth that the assailant entered the driver's side door of the vehicle that fled the scene. Appellant did not dispute that he was the driver of the car, instead arguing that Mr. Dingler, the passenger, had the motive to kill the victim. For these reasons, Appellant cannot establish actual prejudice.

Appellant's fourth claim is that trial counsel was ineffective for not presenting evidence and argument that another person killed the victim. Appellant claims that because Mr. Bumpess did not identify him from the family photograph and there was alleged blood discovered in his car on the passenger seat where Mr. Dingler was seated, there was evidence that Mr. Dingler committed the crime. He maintains that because Mr. Dingler was in a romantic relationship with the victim's ex-wife, he had motive. Appellant relies on four cases where the trial courts disallowed evidence that another person committed the crime: **Commonwealth v. McGowan**, 635 A.2d 113 (Pa. 1993), **Commonwealth v. Ward**, 605 A.2d 796 (Pa. 1992), **Commonwealth v. Boyle**, 368 A.2d 661 (Pa. 1977), and **Commonwealth v. Rini**, 427 A.2d 1385 (Pa.Super. 1981).

McGowan relied on **Ward**, **Boyle**, and **Rini**. In **McGowan**, police arrested and charged the defendant with robbing a pharmacy. The pharmacist and another employee identified the defendant. At trial, the defendant attempted to introduce evidence that he had been incorrectly identified as the perpetrator of a series of similar robberies. The trial court refused to allow the evidence on the grounds that it was irrelevant. This Court disagreed that the evidence was irrelevant but affirmed on alternative grounds. The Supreme Court reversed. In doing so, it reasoned that evidence that another person committed the crime is relevant and admissible. Quoting at length from **Rini**, it opined that evidence of a common scheme is permitted to be shown by the Commonwealth and applies with equal force to a defendant arguing that another individual committed the crimes in question.

In **Ward**, the Pennsylvania Supreme Court reversed a decision not to allow a defendant to present evidence that other parties had motive to commit the crime at issue, arson. Specifically, the defendant wished to show via a police officer that he had acted as an informant in prior drug investigations and feared that these individuals might retaliate. The **Ward** Court ruled that preclusion of the officer's testimony was error. Similarly, in **Boyle**, the Pennsylvania High Court reversed the defendant's three murder convictions based on conspiratorial liability where the trial court refused to

allow him to introduce evidence of motive on the part of two other persons who took part in the killing.

The Commonwealth rejoins that Appellant's issue is waived to the extent he contests trial counsel's arguments because he did not ensure the transcriptions of counsel's closing summation.[7] It continues that during trial counsel's opening statement he alleged that Mr. Dingler was the actual killer, and trial counsel introduced photographs intending to show that there was purported blood on the passenger side of the vehicle where Mr. Dingler was sitting.

We find the cases relied upon by Appellant readily distinguishable. The cases cited by Appellant are situations where evidence was excluded. The record in this matter demonstrates that trial counsel did present evidence in an attempt to implicate Mr. Dingler. He also argued in his opening statement that Mr. Dingler and Appellant's sister had time to concoct their story and were lying. Trial counsel, while not cross-examining Appellant's sister, extensively questioned Mr. Dingler, presented evidence that Mr. Dingler was in the passenger seat of the car Appellant drove to the scene, and attempted to show that there was blood where Mr. Dingler had been seated in the car. During his closing summation, trial counsel argued that the police conducted a poor investigation, Shakur Bumpess lied at trial

_____

[7] The transcript of counsel's closing is included within the certified record. However, it was made part of the record after the briefing in this matter.

and his mother was mistaken in her identification.  He also remarked that photographs showed "blood on the passenger's side door where Brian Dingler never left."  N.T., 12/3/09, at 21.  Counsel maintained that it was improbable that the evidence was planted.  Indeed, trial counsel argued extensively that Mr. Dingler's story defied logic, did not make sense, and that Mr. Dingler had the motive to kill the victim because the victim referred to Mr. Dingler as "a junky a million times."  N.T., 12/3/09, at 29.  Appellant's claim is without merit.

Appellant's penultimate issue is that trial counsel was ineffective in failing to interview and present the testimony of four witnesses regarding Mr. Dingler's contentious relationship with the victim.  "Neglecting to call a witness differs from failing to investigate a witness in a subtle but important way."  **Stewart**, **supra** at 712.  The failure to investigate "presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation."  **Id**. "It can be unreasonable *per se* to conduct no investigation into known witnesses.*"  **Id**. Importantly, a petitioner still must demonstrate prejudice. **Id**.  To demonstrate prejudice where the allegation is the failure to interview a witness, the petitioner must show that there is a reasonable probability that the testimony the witness would have provided would have led to a different outcome at trial.  **Commonwealth v. Dennis**, 950 A.2d 945, 961 (Pa. 2008).

In this respect, a failure to investigate and interview a witness claim overlaps with declining to call a witness since the petitioner must prove: (i) the witness existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the witness was willing to testify; and (v) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial. ***See Commonwealth v. Dennis***, 17 A.3d 297, 302 (Pa. 2011) (discussing failure to interview and call an alibi witness).

Appellant provided witness certifications that he drafted himself for Philip Deluca, Eleftheria Gabranidis, Rosemarie Pander, and Charlene Pander, in which he indicated that these witnesses would testify that Mr. Dingler and the victim had a contentious relationship. He also set forth that these witnesses could testify that the victim's ex-wife and Appellant's sister, Georgianna Pander, instigated fights between her ex-husband and Mr. Dingler. PCRA counsel attached these certifications to his amended petition.[8] Appellant adds that trial counsel knew of these witnesses or through reasonable investigation could have learned of them. According to Appellant, testimony from these witnesses would have "called into question

_____

[8] The record contains a letter from PCRA counsel in which he explains that he did not intend to seek any affidavits from the witnesses and that none of the individuals had contacted him. PCRA counsel therein indicated that Appellant had waived this issue by agreeing on the record not to present additional witnesses aside from his one character witness. Appellant attached this letter among others to a document he sent to the PCRA court.

the Commonwealth's claim at trial that it was the appellant who stabbed the victim to death." Appellant's brief at 57.

In addition, Appellant contends that the fact that he was colloquied on his decision not to call any witnesses except his character witness does not defeat his claim. He suggests that, absent an evidentiary hearing on this issue in which trial counsel would testify as to his trial strategy, it cannot be determined whether Appellant's waiver was knowing, voluntary and intelligent.

The Commonwealth responds that Appellant's failure to provide affidavits is fatal to his claim and that his witness certifications were insufficient because they were authored by himself. In advancing this position, it relies on **Commonwealth v. McLaurin**, 45 A.3d 1131 (Pa.Super. 2012), **Commonwealth v. Khalil**, 806 A.2d 415 (Pa.Super. 2002), **Commonwealth v. Lopez**, 739 A.2d 485 (Pa. 1999), and **Commonwealth v. Lark**, 698 A.2d 43 (Pa. 1997). The PCRA court dismissed this aspect of Appellant's claim based on this Court's decision in **McLaurin**, although it did not provide notice of this defect in its Rule 907 notice of intent to dismiss. **See Commonwealth v. Robinson**, 947 A.2d 710, 711 (Pa. 2008) (*per curiam* order) (opining that it was error to uphold summary dismissal on grounds that petitioner did not include witness certifications from trial counsel where PCRA court did not provide notice of this defect).

In **McLaurin**, the petitioner was found guilty by a jury of indecent assault, indecent exposure, and corruption of a minor. The trial court also adjudicated him guilty of possession of a small amount of marijuana. He filed a timely PCRA petition, which the court dismissed without a hearing after providing notice under Rule 907. One of the issues McLaurin raised was counsel's failure to call fourteen character witnesses. The PCRA court did not find that McLaurin's failure to provide affidavits from the proposed witnesses was grounds for summary dismissal, but rejected the claim on its merits. However, on appeal, this Court, relying on **Khalil**, **supra**, rejected his issue based solely on the failure of the petitioner to attach affidavits from the witnesses. Judge Strassburger filed a concurring and dissenting opinion in which he disagreed with the affidavit rationale and reasoned that the PCRA court's merits-based discussion was erroneous. In his view, the proper remedy was to remand the case to permit PCRA counsel to correct the pleading defect.

We find **McLaurin** is erroneous to the extent it is read to require affidavits. Such a reading is flatly contradicted by **Commonwealth v. Brown**, 767 A.2d 576 (Pa.Super. 2001), and is in clear derogation of both the PCRA statute and the rules of criminal procedure. **McLaurin** relied on **Khalil**, **supra**, which was not a PCRA case, and involved an allegation of ineffectiveness during direct appeal. Thus, the **McLaurin** panel's reliance on that decision is problematic where, as here, the rules of procedure and

statute governing PCRA matters provide that witness certifications are sufficient. Specifically, Pa.R.Crim.P. 902(A)(15) states that a petition seeking an evidentiary hearing shall include "a signed certification as to each intended witness, stating the witness's name, address, and date of birth, and the substance of the witness's testimony. Any documents material to the witness's testimony shall also be included in the petition[.]"

While the rule also sets forth that a "defendant shall attach to the petition any affidavits, records, documents, or other evidence which show the facts stated in support of the grounds for relief," this is not a prerequisite for an evidentiary hearing. Pa.R.Crim.P. 902(D). Concomitantly, the statute reads,

> Where a petitioner requests an evidentiary hearing, the petition shall include a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony. Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible.

42 Pa.C.S. § 9545(d)(1).

Interpreting the statute and the predecessor rule to Rule 902, Pa.R.Crim.P. 1502, the **Brown** Court found that a sworn affidavit is not necessary to secure a hearing. That court, quoting from the legislative history of the statute, observed:

> the notes from the legislative history pertaining to the enactment of this statutory section indicate that the legislature expressly considered the question of whether a PCRA petitioner would be required to obtain a sworn or notarized statement from

a proposed witness in order to have the witness testify at an evidentiary hearing. A principal architect of the 1995 Legislative Amendments to the PCRA, Senator Stewart Greenleaf, spoke on this question as follows:

> In addition, when we held the hearing there was concern about the fact that when you file a petition, we want to make sure that it is a meritorious petition, we do not want to have a frivolous petition, that there are some witnesses that would be available to testify, so the original bill required that each witness had to sign a statement and have a notarized, sworn statement at the end of the statement indicating that this was a true and correct representation of what he would testify to at the coming collateral hearing. There were objections to that, feeling that that was too onerous to require a defendant to go out and obtained notarized statements from all of his witnesses, some of which would be hostile witnesses, and I agreed with that.
>
> So as a result, this amendment allows a defendant to merely present a summary of the statement so we know generally what that witness is going to say and merely sign a certification. **Either the witness, his attorney, the defendant's attorney, or the petitioner himself**, **the defendant himself can sign a certification** saying to his best knowledge that this was an accurate statement of what the witness would testify to. So I think it is an effort, again, not to take anyone's rights away from him but also to help that defendant in the processing of his appeal and hopefully to make it easier for him to obtain a hearing, which we want him to obtain.

Pa. Senate Journal, 1st Spec. Sess., June 13, 1995, at 217.

**Brown**, **supra** at 582-583 (Pa.Super. 2001) (emphasis added). The **Brown**

panel then stated, "consistent with this express legislative intent, we hold

- 29 -

that Appellant was not required to attach sworn affidavits to his PCRA petition in support of his request for an evidentiary hearing." *Id*. at 583.[9]

As the decision in *Brown* based its ruling on both statutory construction and the rules of procedure, and *McLaurin* is premised on a non-PCRA case, *Brown* is the more sound precedent. Further, as highlighted by the *Brown* decision, the Commonwealth's argument that Appellant's offer of proof was deficient because he created the certifications himself is spurious. Its citation to *Commonwealth v. Lopez*, 739 A.2d 485 (Pa. 1999), is also misplaced as *Lopez* was not a PCRA case. The sole PCRA case cited by the Commonwealth, *Commonwealth v. Lark*, 698 A.2d 43 (Pa. 1997), involved a PCRA petition filed prior to the November 1995

---

[9] The legislative history shows that the Pennsylvania District Attorney's Association was behind the draft of the 1995 PCRA amendments, Pa. Senate Journal, 1st Spec. Sess., June 13, 1995, at 215-217, and early drafts of the proposed legislation specifically called for affidavits. *See* S.B. 81, (Spec. Sess. No. 1), March 21, 1995 (Printer's No. 109) ("WHERE A PETITIONER REQUESTS AN EVIDENTIARY HEARING, THE PETITION SHALL INCLUDE A NOTARIZED AFFIDAVIT FROM EACH INTENDED WITNESS STATING THE WITNESS'S NAME, ADDRESS, DATE OF BIRTH AND SUBSTANCE OF TESTIMONY."); S.B. 81, (Spec. Sess. No. 1), May 23, 1995 (Printer's No. 131) ("Where a petitioner requests an evidentiary hearing, the petition shall include a notarized affidavit from each intended witness stating the witness's name, address, date of birth and substance of testimony AND SHALL INCLUDE DOCUMENTS MATERIAL TO THAT WITNESS'S TESTIMONY."). This language was changed and the legislature inserted the words "witness certification" in its place. *See* S.B. 81, (Spec. Sess. No. 1), June 13, 1995 (Printer's No. 147); S.B. 81, (Spec. Sess. No. 1), June 13, 1995 (Printer's No. 147); S.B. 81, (Spec. Sess. No. 1), Oct. 30, 1995 (Printer's No. 172); Nov. 17, P.L. 1118, No. 32 (Spec. Sess. No. 1), § 1, effective in 60 days.

amendments to the PCRA statute, which included the witness certification provision. Therefore, when that petition was filed, the relevant portion of the statute governing witness certifications was not in force. **See** Nov. 17, P.L. 1118, No. 32 (Spec. Sess. No. 1), § 1, effective in 60 days.

Simply put, the certification requirement can be met by an attorney or *pro se* petitioner certifying what the witness will testify regarding. **See Brown**, **supra**; 42 Pa.C.S. § 9545(d)(1); Pa.R.Crim.P. 902(A)(15). Accordingly, we expressly overrule **McLaurin** insofar as it requires PCRA petitioners to file affidavits to be entitled to an evidentiary hearing. Moreover, we note that it is improper to affirm a PCRA court's decision on the sole basis of inadequate witness certifications where the PCRA court did not provide notice of the alleged defect. **See Robinson**, **supra**;[10] Pa.R.Crim.P. 905(B). Nonetheless, Appellant is not entitled to relief on his failure to interview or call witnesses claim for the reasons that follow.

In **Commonwealth v. Rios**, 920 A.2d 790 (Pa. 2007), the Supreme Court concluded that a claim that counsel was ineffective in failing to call alibi witnesses lacked arguable merit where the trial court conducted a colloquy of the defendant regarding whether he agreed with the decision not to proffer those witnesses. The High Court premised its decision on

_____

[10] We acknowledge that *per curiam* orders are not binding precedent, but find the discussion in **Robinson**, persuasive. **See also Commonwealth v. Williams**, 782 A.2d 571, 526-527 (Pa. 2001)

***Commonwealth v. Paddy***, 800 A.2d 294 (Pa. 2002). Therein, the Court stated, "As Paddy expressed the view that the decision not to call alibi witnesses was his as well as trial counsel's, and his decision has not been shown to have been unknowingly, involuntarily, or unintelligently made, this allegation of ineffectiveness lacks arguable merit." ***Id***. at 316.

Instantly, the trial court conducted a thorough colloquy regarding Appellant's decision not to testify, not to call fact witnesses, and to present only one character witness. We set forth part of that colloquy below.

> Court: It's also my understanding the Defense will not be presenting any factual testimony in terms of what happened on the date that this incident is alleged to have occurred. You talked to your attorney about that as well?
>
> Defendant: Yes, sir.
>
> Court: You've had numerous conversations about that?
>
> Defendant: Yes, sir.
>
> Court: It's your personal decision not to present any evidence on the factual issues; is that correct?
>
> Defendant: Yes, sir.
>
> Court: Now, you've been with your attorney for two years now?
>
> Defendant: Yes, sir.
>
> Court: And you had occasion to discuss all aspects of your case with him?
>
> Defendant: Yes.
>
> Court: And you're satisfied with his representation so far?
>
> Defendant: Yes, sir.

Court:  Any questions, Counsel?

Prosecutor:  No, thank you.

Trial Counsel:  Just briefly.  Mr. Pander, His Honor asked you questions about your decision.  Have you had a chance to talk to me?  Do you remember asking those questions?

Defendant:  Yes, sir.

Trial Counsel:  You had a chance to talk to Mr. Henry from my office.

Defendant:  Yes, sir.

Trial Counsel:  At the lunch break, we've had conversations with you today in the basement?

Defendant:  Yes, sir.

Trial Counsel:  That was about a lot of aspects of the case, correct?

Defendant:  Yes, sir.

Court:  Are there any witnesses that you desire to call to testify outside of the witness that's schedule[d] tomorrow morning?

Defendant:  No, sir, just the character witness tomorrow.

N.T., 12/2/07, at 228-230.  Based on these representations and the **_Rios_** and **_Paddy_** decisions, Appellant's issue has no arguable merit.

We are cognizant that in **_Commonwealth v. Nieves_**, 746 A.2d 1102 (Pa. 2000), a pre-**_Commonwealth v. Grant_**, 813 A.2d 726 (Pa. 2002) direct appeal, our Supreme Court found an ineffectiveness claim warranted relief where the defendant was colloquied as to his decision not to testify in his own defense.  There, counsel incorrectly advised the defendant that if he

elected to testify, evidence of certain prior convictions would be admissible. This matter does not involve Appellant's decision to testify, and the colloquy conclusively establishes that Appellant agreed with trial counsel's decision not to present additional witnesses.

Appellant's final issue is that trial counsel was ineffective in failing to secure DNA testing of alleged blood evidence discovered on the inside passenger side door of his car six days after Appellant's vehicle was returned to his mother by police. Appellant asserts that the "presence of Dingler's blood on the passenger side of the vehicle would establish that he was involved in the incident that resulted in the victim's death." Appellant's brief at 65. He continues that this evidence would also have called into question the identification testimony and that it was immaterial that the alleged blood was not discovered until a week after the car was returned to Appellant's family.

The Commonwealth responds that Appellant has not proffered any "evidence that the stain was blood, or that, if it was blood, it belonged to Dingler or the victim." Commonwealth's brief at 33. According to the Commonwealth, Appellant's claim that the alleged blood would be exculpatory is speculative. It highlights that three eyewitnesses testified similarly to Mr. Dingler and two of those witnesses identified Appellant, and that there was no dispute that Appellant entered the driver's side of the car.

We recognize that in **Commonwealth v. Williams**, 899 A.2d 1060 (Pa. 1999), while discussing the reasonable basis of a claim that counsel was ineffective in failing to secure DNA testing, the Supreme Court opined,

> It is easy to say that failing to pursue exculpatory evidence is ineffectiveness, but this presumes the evidence will indeed be exculpatory. If counsel were sure the accused's DNA would not be revealed in any relevant samples from the victim or scene, certainly testing would give exculpatory results and should be sought. However, the client's mere claim of innocence or alibi does not always settle the question; effectiveness of counsel is not dependent on accepting the candor of the client. Testing that shows the DNA matches suddenly makes a conviction-one that might have been avoided or less than certain-a sure thing.
>
> That is, subjecting a client to DNA testing is very likely to settle whether there will be a conviction or not. It can demolish the prosecution's case, but it can cast it in concrete as well. It can eliminate the potential of a "not guilty" verdict based on an alibi, or on reasonable doubt, and the less compelling the Commonwealth's case, the less compelling is the desire for pre-trial DNA testing. Not seeking testing that has the potential to convict a client may be a very reasonable strategy; strategy is not measured through hindsight against alternatives not pursued, so long as trial counsel had a reasonable basis for the decision made.

**Williams**, **supra** at 1064. The **Williams** Court continued, stating, "where a defendant requests pre-trial DNA testing, counsel should advise him such test has the potential to strongly inculpate, not just exonerate. If the defendant still wishes to have the test, counsel should accede to this demand." **Id**. at 1065. Since it was unclear in **Williams** why his attorney did not seek DNA testing, the **Williams** Court remanded for a determination as to whether counsel had a reasonable basis for not pursuing the testing.

However, in this matter, DNA testing would not have led to a reasonable probability that the outcome of the trial would have been different. Here, the officer who processed the vehicle originally testified that the blood-like stain in the passenger area was not in the vehicle when he examined it. The alleged blood stain appeared in a photograph taken by a defense investigator six days after police processed the car. The car was released to Appellant's mother, the owner, before the stain was discovered. Thus, the fact that blood was located in the vehicle after police examined it and it was returned to its owner does not exculpate Appellant.

Moreover, as the Commonwealth astutely points out, aside from Brian Dingler, whom Appellant claims committed the crime, two other eyewitnesses identified Appellant as the murderer. Equally important, both witnesses unequivocally saw him enter the driver's side of the car before fleeing. Those witnesses had seen Appellant in the neighborhood on prior occasions. Admittedly, one of those witnesses did misidentify the perpetrator in a photograph. That witness, Mr. Bumpess, however, was not friends with Mr. Dingler, conclusively identified Appellant at trial, and remained steadfast that the attacker was the driver of the car that fled the scene. A third witness could not identify Appellant, but testified to seeing the assailant jump into the driver's seat of the vehicle after the attack. Not a single person identified Mr. Dingler as the person who killed the victim or

stated that he drove the vehicle, despite Mr. Dingler's acknowledged presence as the passenger in Appellant's vehicle.[11]

Under Appellant's theory, Mr. Dingler fought with the victim and killed him before entering the passenger side of the car. Mr. Dingler then deposited blood from the fight in the passenger area of the vehicle, which police did not discover when examining the car, but appeared after the car was returned to his mother. However, the evidence established that the killer entered the driver's side of the vehicle, and Appellant himself concedes that Mr. Dingler was seated in the passenger's side of the car. Hence, Appellant's claim is fundamentally flawed. Since Appellant cannot establish prejudice, his issue fails.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2014

---

[11] The Commonwealth asked the two eyewitnesses who identified Appellant if they recognized Brian Dingler from that night; each stated that they did not.