J-S02025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSE TORRES, | |
| Appellant | No. 464 EDA 2014 |

Appeal from the Judgment of Sentence of January 13, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011954-2010

BEFORE:  MUNDY, OLSON and WECHT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 24, 2015**

Appellant, Jose Torres appeals from the judgment of sentence entered on January 13, 2014.  We affirm.

The trial court accurately summarized the factual background of this case as follows:

> On May 9, 2010, at around 6:30 p.m., Felix Santos Sr. [("Felix Sr."], along with his wife Cristina, seven-year-old daughter, and [18]-year-old son Felix [Santos] Jr. [("Felix Jr."], returned to West Butler Street in Philadelphia.  Felix Sr. double-parked his car in front of the Torres household, and his family began to unload the shopping bags from the car.  A few minutes later, while Felix Sr. was still in the house, Felix Jr. noticed that a parking spot had become available, and told his father that he would move the car into the spot.  Once he did so, some of the Torres family came out of their house, including Blanca Hernandez, [Appellant's] mother.  Hernandez proceeded to spit in Felix Sr.'s face for taking her parking spot.  At this point, Felix Sr. decided to take his family inside in order to avoid a violent confrontation.

Just minutes later, while Felix Sr. was telephoning the police, [Appellant] came up to the Santos house and began to shake the front gate. [Appellant] told Felix Sr. to come outside so that he c[ould] kill him. Before the police arrived, [Appellant] went back to his house, returned with a shovel, and began to smash the [Santos'] car with it. Because of [Appellant's] actions, the car alarm went off, and Felix Sr. saw that the hood and mirror of the car were damaged. After hearing the alarm, while still waiting for the police to arrive, Felix Sr. decided to go outside, and his wife, [Felix Jr.], and young daughter followed. In order to protect himself from any further violence, Felix Sr. took his son's baseball bat on his way outside. After a brief scuffle between a young woman from the Torres family and Felix Sr.'s son and daughter, the police finally arrived. The police [] told both parties to go back to their respective houses, and to not come back out. After doing so, the police departed.

The Santos family followed the police's orders, and returned to their house, along with their other son, [D.S.], who was [14] at the time, as well as Felix Sr.'s brother. The latter two were not present during the initial incident, but returned from work while the police were on scene. Just minutes after the Santos family had returned to their house, they received a call from Stephany, Felix Sr.'s niece, saying that [A.], Felix Sr.'s [14]-year-old nephew, was getting beaten up on the street. Felix Sr. decided to go back outside in order to help his nephew. Again, his family followed him outside in order to assist him.

After trying to help his nephew, three males, one of them being [Appellant], came after Felix Sr. Felix Sr. tried running back into his house out of fear of what they may do to him. However, while he was still on his porch, two of the individuals grabbed his arms, and [Appellant] proceeded to stab him three times in the chest. After stabbing Felix Sr., the two males that had held him down, and [Appellant], left the crime scene. At this point, Felix Sr.'s family saw him lying bloody and unconscious on the porch of his house. Stephany called the police.

When the police arrived, they rushed Felix Sr. to the emergency room at Temple University Hospital. According to Dr. Amy Goldberg, the physician who treated Felix Sr., the stab wounds were very serious. When Felix Sr. arrived at the hospital, he had a very faint pulse, if any, and was barely breathing. Because of the extreme loss of blood and corresponding lengthy lack of

oxygen, his brain suffered severely. To this day, he remains on life support and is unconscious.

Trial Court Opinion, 6/30/14, at 2-4 (internal quotation marks and citation omitted).

The procedural history of this case is as follows. On October 6, 2010, Appellant was charged via criminal information with attempted murder,[1] conspiracy to commit murder,[2] aggravated assault,[3] conspiracy to commit aggregated assault,[4] possessing an instrument of crime,[5] making terroristic threats,[6] simple assault,[7] and recklessly endangering another person.[8] Jury selection began on September 19, 2012 and trial began on September 20, 2012. On September 28, 2012, Appellant was found guilty of attempted murder, aggregated assault, and conspiracy to commit aggravated assault. On September 26, 2013, Appellant was sentenced to an aggregate term of 40 to 80 years' imprisonment.

---

[1] 18 Pa.C.S.A. §§ 901, 2502(a).

[2] 18 Pa.C.S.A. §§ 903, 2502(a).

[3] 18 Pa.C.S.A. § 2702(a).

[4] 18 Pa.C.S.A. §§ 903, 2702(a).

[5] 18 Pa.C.S.A. § 907(a).

[6] 18 Pa.C.S.A. § 2706(a)(1).

[7] 18 Pa.C.S.A. § 2701(a).

[8] 18 Pa.C.S.A. § 2705.

On October 4, 2013, Appellant filed a post-sentence motion. On October 24, 2013, the trial court granted Appellant's post-sentence motion and vacated his judgment of sentence. On January 13, 2014, the trial court re-sentenced Appellant to 30 to 60 years' imprisonment. This timely appeal followed.[9]

Appellant presents one issue for our review:

> Did the [trial c]ourt err in denying [Appellant's] request for a **Kloiber** charge for Commonwealth witnesses Cristina Santos, Carmen Santos[,] and [D.S.]?

Appellant's Brief at 3.

Appellant contends that the trial court erred by not giving a jury instruction pursuant to **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954). "A **Kloiber** instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have an opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions." **Commonwealth v. Pander**, 100 A.3d 626, 635 (Pa. Super. 2014) (*en banc*) (citation omitted). "We evaluate whether a **Kloiber** instruction is necessary under an abuse of discretion standard."

---

[9] On February 11, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On February 22, 2014, Appellant filed his concise statement. On June 30, 2014, the trial court issued its Rule 1925(a) opinion. Appellant's lone issue on appeal was included in his concise statement.

***Commonwealth v. Sanders***, 42 A.3d 325, 332–333 (Pa. Super. 2012), *appeal denied*, 78 A.3d 1091 (Pa. 2013) (citation omitted).

Appellant's lone argument on appeal is waived. As this Court recently explained:

> In order to preserve a claim that a jury instruction was erroneously [omitted], the Appellant must have objected to the charge at trial. Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language **or omission** complained of."); Pa.R.Crim.P. 647(B) ("No portions of the charge **nor omissions from the charge** may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."). . . .
>
> The pertinent rules, therefore, require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue.

***Commonwealth v. Parker***, 104 A.3d 17, 29 (Pa. Super. 2014) (certain citations omitted; emphasis added).

In this case, Appellant did not object after the jury charge was given. ***See*** N.T., 9/28/12, at 132. Accordingly, Appellant has waived any challenge to the jury charge in this case. Furthermore, even if we were to reach the merits of Appellant's lone issue on appeal, we would conclude that he is not entitled to relief.

Appellant contends that a **Kloiber** charge was required because Cristina, Carmen, and D.S. were all involved in a melee at the time they saw Appellant assaulting Felix Sr. Appellant contends that because Cristina was being held down during the melee, this made her identification unreliable. He also argues that Carmen's identification was unreliable because she had not previously mentioned to police that she saw Appellant lunge towards Felix Sr. and then saw blood on Felix Sr.'s side. Appellant contends that D.S.'s identification is unreliable because he did not mention to police during the investigation that he saw Appellant attempt to hit his father with a baseball bat immediately prior to the stabbing.

As to D.S., the trial court did give a **Kloiber** instruction during trial. Specifically, it informed the jury that "[D.S.] did not identify defendant Jose Torres in any prior statement or investigation by the authorities. I'm instructing you giving you that instruction now in view of some of the testimony that you heard just before we broke." N.T., 9/25/12, at 50. "Although the trial court did not use the magic words that the jury must receive the identification evidence 'with caution,' the modified **Kloiber** instruction adequately alerted the jury of the potential problems with that testimony." **Pander**, 100 A.3d at 637. Appellant did not object to the adequacy of this instruction. **See Commonwealth v. Charleston**, 16 A.3d 505, 528 (Pa. Super. 2011), *appeal denied*, 30 A.3d 486 (Pa. 2011) (requiring a defendant to object to a cautionary instruction if he believes it is

inadequate). Furthermore, it is well-settled that the trial court may choose to give a cautionary instruction either during the trial or during the general charge. *See Commonwealth v. Overby*, 809 A.2d 295, 315 n.1 (Pa. 2002). Therefore, the trial court gave a *Kloiber* charge that satisfied Appellant at trial. Accordingly, Appellant's claim that the trial court failed to give a *Kloiber* charge as to D.S. is without merit.

As to Cristina and Carmen, Appellant relies upon *Commonwealth v. Simmons*, 647 A.2d 568 (Pa. Super. 1994), *appeal denied*, 659 A.2d 987 (Pa. 1995), in support of his argument that he was entitled to a *Kloiber* instruction. *Simmons*, however, is distinguishable from the case at bar. In *Simmons*, the witness testified at the preliminary hearing that he saw the defendant flee from a certain door. *Id.* at 569. At trial, a police officer testified it would have been physically impossible for the witness to see the defendant flee from that door. *Id.* Also at trial, the witness changed his testimony and said that he saw the defendant flee from a different door. *Id.* Thus, in *Simmons,* the witness' testimony changed completely from the preliminary hearing to the trial. Furthermore, a police officer testified that the witness' original testimony was physically impossible. Neither of those situations is present in this case. Cristina and Carmen never changed their testimony and it is physically possible that both witnesses would have been able to see Appellant during, or immediately prior to, the stabbing.

Appellant also relies upon ***Commonwealth v. Mouzon***, 318 A.2d 703 (Pa. 1974), in support of his argument that he was entitled to a ***Kloiber*** charge. In ***Mouzon***, two accomplices to a murder testified at trial that the defendant beat the victim with a radio antenna. ***Id.*** at 704. Two police officers testified that at the time of the crime the lighting was poor – which would have made eyewitness identification difficult. ***Id.*** at 705. Thus, our Supreme Court held that Mouzon was entitled to a ***Kloiber*** charge. ***Id.*** In the case *sub judice*, there was no evidence that the lighting conditions at the scene of the stabbing were poor.

Instead, we find that this case is more analogous to ***Commonwealth v. Reid***, 99 A.3d 427 (Pa. 2014). In ***Reid***, two witnesses failed to identify the defendant when they initially spoke to police. ***Id.*** at 448. Nonetheless, our Supreme Court noted that the witnesses knew the defendant and had an opportunity to view the defendant at the time of the murder. ***Id.*** at 448-449. As our Supreme Court emphasized, "case law makes clear that the need for a ***Kloiber*** charge focuses on the **ability** of a witness to identify the defendant." ***Id.*** at 449 (emphasis in original). Therefore, our Supreme Court held that Reid was not entitled to a ***Kloiber*** instruction.

Furthermore, our Supreme Court has held that a ***Kloiber*** charge is not required in circumstances where the identifications at issue were more suspect than the identifications in this case. In ***Commonwealth v.***

*Paolello*, 665 A.2d 439 (Pa. 1995), our Supreme Court held that even though the witnesses were

> under the influence of alcohol, the room was dark, they had been awakened from sleep, and the events being observed were confusing [the defendant's] objections relate to the credibility of the eyewitness testimony, not to the actual physical ability of the witnesses to observe from their respective positions in relation to the events. Accordingly, a *Kloiber* charge was not required.

*Id.* at 445. Again, as in *Reid*, our Supreme Court focused on the physical ability of the witnesses to view the defendant.

In this case, both Cristina and Carmen could clearly see Appellant. Although they were involved in an altercation at the time of the incident, there is no indication that they were physically prevented them from viewing Appellant. Instead, as in *Paolello,* the fact that they were involved in an altercation at the time they witnessed Appellant stab Felix Sr. went to Carmen's and Cristina's credibility – not their actual physical ability to observe the incident. As neighbors, they knew Appellant and his appearance. As in *Reid*, Cristina and Carmen did not originally identify Appellant to the police. Nonetheless, they made unequivocal identifications at trial and they had the ability to view Appellant's attack on Felix Sr. Accordingly, the trial court did not abuse its discretion in declining to give a *Kloiber* charge as to Cristina and Carmen.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2015