J-S39026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL WILLIS | |
| Appellant | No. 2766 EDA 2014 |

Appeal from the Order Entered August 22, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1000571-2005

BEFORE:  BOWES, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED October 6, 2015**

Michael Willis appeals the order entered August 22, 2014, in the Philadelphia County Court of Common Pleas denying his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*. Willis seeks relief from the judgment of sentence of an aggregate 10 to 20 years' imprisonment, imposed on March 16, 2007, following his jury conviction of robbery and possession of an instrument of crime ("PIC").[1]  On appeal, Willis argues the PCRA court erred in denying his claim of ineffectiveness of counsel without first conducting an evidentiary hearing. For the reasons that follow, we affirm.

_____

[1] 18 Pa.C.S. §§ 3701(a)(1) and 907(a), respectively.

The relevant facts and procedural history were summarized by the Pennsylvania Supreme Court in a prior appeal as follows:

At approximately 2:15 a.m. on April 29, 2005, David Thomas was walking along 6th Street in Philadelphia when two men approached him and pushed him. One of the men pulled a gun from his pocket and pointed it at Thomas' face, telling Thomas "give us your money or we'll blow your head off." N.T. Trial, 10/31/06, at 46–47. Thomas gave the gunman approximately $40, and his assailants then fled. Although it was dark at the time of the incident, Thomas was able to see his assailants by the light of the streetlamps. *Id.* at 45–46, 68.

Approximately one hour later, after returning home, Thomas called the police to report what had happened. When the police arrived at Thomas' home, he initially told them he would be unable to identify the men who robbed him because he was nervous and overwhelmed. Eventually, however, he gave police a description, describing the man with the gun as between 5'9" and 6' tall, with dark skin and a goatee, and wearing a puffy black coat. Thomas described the other man as light-skinned, clean-shaven, and wearing tan pants and a hockey jersey. At approximately 4:15 am., Thomas accompanied the officers to the police station, where he gave a formal statement and description.

Nearly two weeks later, on May 12, 2005, police again went to Thomas' house and showed him a photo array of eight individuals. From the photo array, Thomas identified Michael Willis … as the gunman who had robbed him. Thereafter, Willis and his accomplice, Richard Peoples, were arrested and charged with robbery and [PIC]. On August 17, 2005, Thomas picked Willis out of a line-up, again identifying Willis as one of his attackers. Thomas also identified Willis as the gunman both at his preliminary hearing on August 18, 2005, and at trial.

On November 1, 2006, Willis was convicted by a jury of the aforementioned charges. Prior to sentencing, Willis filed a motion challenging the verdict as against the weight and sufficiency of the evidence. Willis also filed a motion for a new trial on the basis of an alleged *Brady* violation by the Commonwealth. Specifically, Willis alleged that Peoples had made a deal with the Commonwealth prior to trial, whereby he

- 2 -

agreed to plead guilty to certain unrelated charges in exchange for the Commonwealth's *nolle pros* of certain other charges, including the robbery of Thomas. Willis averred that, in the course of his discussions with police, Peoples indicated that he committed the Thomas robbery with someone other than Willis, namely, a man named Robert Richardson a/k/a Woodard (hereinafter "Woodard"). The statement was inadvertently omitted from documents produced by the Commonwealth prior to trial, and was discovered by the prosecutor in her file following trial. The statement was brought to the trial court's attention, and the court offered to allow the victim to view another photo array containing a photo of Woodard, but Willis' counsel refused.

Peoples was subpoenaed to testify at a hearing on Willis' **Brady** claim, but was not transported from state prison to court because, according to a statement made by the prosecutor to the trial judge at the hearing, Peoples' attorney told the prosecutor that he would advise Peoples to invoke his Fifth Amendment rights and refuse to testify regarding the robbery. Willis' counsel did not object to the prosecutor's statement, nor did she request that Peoples be brought to court to confirm on the record that he would invoke the Fifth Amendment if asked to testify about the robbery.

In his opinion for the trial court, the Honorable Glenn B. Bronson acknowledged that Peoples' statement, which identified someone other than Willis as the person who robbed Thomas, "plainly was exculpatory and should have been provided to the defense." **Commonwealth v. Willis**, CP–51–CR–1000571–2005, unpublished memorandum at 5 (Phila. Cty. filed Sept. 4, 2007). Nevertheless, the trial court concluded that Peoples' statement was not material within the meaning of **Brady** because disclosure of the statement could not have affected the outcome of the case. Specifically, the trial court reasoned that Peoples' out-of-court statement was inadmissible hearsay, and that, based on the prosecutor's statement that Peoples' attorney told her he would advise Peoples not to testify, Peoples' statement would never have been introduced to the jury. In addition, the trial court noted "the evidence at the hearing established that Woodard did not resemble [Willis], thereby making it improbable that the complaining witness confused [Willis] for Woodard and made a misidentification." **Id.** at 6. Accordingly, on March 16, 2007, the trial court denied Willis' motion for a new trial based on the Commonwealth's alleged

- 3 -

***Brady*** violation, and sentenced Willis to an aggregate term of 10 to 20 years incarceration.[2]

Following the denial of his post-trial motions, Willis appealed his judgment of sentence to the Superior Court. On May 14, 2008, the Superior Court vacated Willis' judgment of sentence and remanded for a new trial. ***Commonwealth v. Willis***, 1024 EDA 2007, unpublished memorandum, 954 A.2d 44 (Pa. Super. filed May 14, 2008). In doing so, the Superior Court relied on [the Supreme] Court's decision in ***Commonwealth v. Green***, [640 A.2d 1242 (Pa. 1994)], for the proposition that ***Brady*** does not require an analysis of the admissibility of evidence before such evidence can be deemed material. Specifically, the Superior Court noted that Peoples' statement "goes directly to the potential innocence of Willis;" that there was no proof that Peoples would have refused to testify; and that, "even if the statement were not admissible, it is not the Commonwealth's role to determine how defense counsel shall use such evidence." ***Willis***, 1024 EDA 2007, at 6.

***Commonwealth v. Willis***, 46 A.3d 648, 651-652 (Pa. 2012).

Thereafter, the Commonwealth petitioned the Pennsylvania Supreme Court for review. The Court granted the appeal, and, on May 30, 2012, in a plurality decision,[3] reversed the decision of this Court and reinstated Willis' judgment of sentence. ***Id.*** In the Opinion Announcing the Judgment of the Court ("OAJC"), Justice Todd, joined by Justice Baer, held that "nondisclosed

---

[2] Because Willis' robbery conviction was his second conviction of a crime of violence, the trial court imposed a mandatory minimum sentence, pursuant to 42 Pa.C.S. § 9714(a)(1), of 10 to 20 years' imprisonment for the robbery count, and a concurrent term of one and one-half to three years' for the PIC count. ***See*** N.T., 3/16/2007, at 13-14, 25-26. We note the mandatory minimum sentencing provision at Section 9714 does not implicate the United States Supreme Court's decision in ***Alleyne v. United States***, 133 S.Ct. 2151, (U.S. 2013). ***See Commonwealth v. Reid***, 117 A.3d 777, 785 (Pa. Super. 2015).

[3] All of the Justices agreed the decision of this Court was incorrect.

- 4 -

favorable evidence which is inadmissible at trial may be considered material for purposes of *Brady*, as long as there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 650. Further, Justice Todd emphasized that to satisfy the "reasonable probability" standard, "a defendant necessarily must identify specific evidence or information that would have been uncovered, and explain how that evidence or information would have changed the result of the proceeding." *Id.* at 670. Nevertheless, because Justice Todd concluded Willis failed to "establish there was a reasonable probability that, had the evidence withheld by the Commonwealth been disclosed, there would have been a different outcome at trial," she reversed the order of this Court and reinstated Willis' judgment of sentence. *Id.*

In a Concurring Opinion, then Chief Justice Castille, joined by Justices Eakin and McCaffery, agreed Willis failed to prove "the undisclosed evidence at issue satisfied the materiality standard established by *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny." *Id.* at 674 (Castille J., Concurring). However, Justice Castille disagreed with the OAJC's discussion of and reliance on the Supreme Court's prior decision in *Green*, *supra*.[4]

---

[4] In *Green*, the Supreme Court reversed the defendant's death sentence for the murder of a police officer and remanded for a new trial based upon a *Brady* violation. *Green*, *supra*, 640 A.2d at 1243. Specifically, the Court found the Commonwealth failed to disclose to the defense an exculpatory statement by a witness who claimed that after the murder, Green's co-defendant told him she had killed a cop. *Id.* at 1244. The Court determined
*(Footnote Continued Next Page)*

Similarly, in another concurring opinion, Justice Saylor joined in the OAJC, except for its treatment of **_Green_**, **_supra_**, which he described as "too cryptic to provide a useful platform for clarification." **_Id._** at 684-685 (Saylor, J., Concurring).

_(Footnote Continued)_ ————————————

the statement was relevant and material to the both the guilt and penalty phases of the trial. Specifically, with regard to the guilt phase, the Court opined:

> First, [the witness's] statements to the police in no way implicated [Green] in the murder. Instead, they implicated only [his co-defendant]. Moreover, knowledge of [the co-defendant's] statement to [the witness] certainly would have opened another avenue of investigation for the defense that may well have led to further exculpatory evidence. Had the defense been aware of [the witness's] statements, it may also have altered its trial strategy, especially in regards to [Green's] decision not to testify since [the witness's] statements were consistent with [Green's] own statements to the police.

**_Id._** at 1245-1246. Further, the Court concluded that the United States Supreme Court's decision in **_Brady_** "in no way mandates that the [undisclosed] evidence first be admissible before it can be deemed 'material' to the defense." **_Id._** at 1246.

In his Concurring Opinion in **_Willis_**, Chief Justice Castille took issue with the **_Green_** Court's holding that "[i]n determining the materiality of the omitted evidence we must, therefore, consider any adverse effect that the prosecutor's failure to disclose might have had on not only the presentation of the defense at trial, **but the preparation of the defense as well.**" **_Willis_**, **_supra_**, 46 A.3d at 674 (Castille, C.J., Concurring) (emphasis in original and citation omitted). Rather, the Chief Justice stated he would overrule **_Green_**, and require "that the derivative, admissible evidence be specifically identified, with an explanation of why it is difference-making under the reasonable probability standard." **_Id._** at 684 (Castille, C.J., Concurring).

- 6 -

Thereafter, on July 28, 2012, Willis filed a timely, *pro se* PCRA petition. Counsel was appointed, and filed an amended petition on February 11, 2014, which (1) challenged the ineffective assistance of all prior counsel for failing to properly preserve the issue of materiality with respect to his **Brady** claim, and (2) requested permission "to subpoena Peoples to the Courtroom so that the PCRA Court could determine, once and for all, whether Peoples is a viable witness." Amended Post Conviction Relief Act Petition, 2/11/2014, at 9-10. In response, the Commonwealth filed a motion to dismiss the petition.

On May 5, 2014, the PCRA court sent Willis notice, pursuant to Pa.R.Crim.P. 907, of its intent to dismiss his petition without first conducting an evidentiary hearing. Willis submitted a *pro se* response, and, on August 22, 2014, the court dismissed his PCRA petition. This timely appeal followed.[5]

On appeal, Wilis focuses his claim on the PCRA court's failure to grant him an evidentiary hearing. Specifically, he asserts trial counsel was ineffective when she declined the trial court's offer to show a photo array to the victim, which included a photo of Woodard, the "real" co-conspirator according to Peoples' police statement. Willis claims "that was the only way

_____

[5] On September 23, 2014, the PCRA court ordered Willis to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Willis complied with the court's directive and filed a concise statement on October 15, 2014.

to have demonstrated that the **Brady** exclusion was material." Willis' Brief at 13. Rather, he argues, counsel "took a chance of winning on a procedural right … where there was no real reason to believe that the right would be vindicated." **Id.** Further, Willis contends the PCRA court should have granted him permission to subpoena Peoples. He states, "If the witness Peoples would not be claiming a Fifth Amendment privilege, he would be available to the defense." **Id.** To that end, Willis also requested assistance from the District Attorney's Office to provide "at the very least, the last known address for Peoples." **Id.** at 14.

When reviewing an order dismissing a PCRA petition, we must determine whether the PCRA court's findings of fact are supported by the record, and whether its legal conclusions are free from error. **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014). "Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." **Commonwealth v. Carter,** 21 A.3d 680, 682 (Pa. Super. 2011) (citation omitted).

Where, as here, the claims raised on appeal challenge the effectiveness of counsel, our review is well-settled:

> We begin our analysis of ineffectiveness claims with the presumption that counsel is effective. To prevail on his ineffectiveness claims, Appellant must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) Appellant suffered prejudice because of counsel's action or inaction. With

regard to the second, *i.e.*, the "reasonable basis" prong, we will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." To establish the third, *i.e.*, the prejudice prong, Appellant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

*Commonwealth v. Spotz*, 18 A.3d 254, 259-260 (Pa. 2011) (internal citations omitted). "Failure to establish any prong of the test will defeat an ineffectiveness claim." *Commonwealth v. Keaton*, 45 A.3d 1050, 1061 (Pa. 2012) (citations omitted).

Further, with regard to a petitioner's right to an evidentiary hearing, it is well-settled that:

The PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings." *Commonwealth v. Paddy*, 609 Pa. 272, 15 A.3d 431, 442 (2011) (quoting Pa.R.Crim.P. 909(B)(2)). "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Id.* (quoting *Commonwealth v. D'Amato*, 579 Pa. 490, 856 A.2d 806, 820 (2004)). **We stress that an evidentiary hearing "is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness."** *Commonwealth v. Jones*, 571 Pa. 112, 811 A.2d 994, 1003 n. 8 (2002) (citation omitted). In *Jones*, we declined to remand for an evidentiary hearing when the appellant merely asserted that counsel did not have a reasonable basis for his lack of action but made no proffer of evidence as to counsel's lack of action.

- 9 -

*Commonwealth v. Roney*, 79 A.3d 595, 604-605 (Pa. 2013) (emphasis added), *cert. denied*, 135 S. Ct. 56 (U.S. 2014). Indeed, "if the court can determine without an evidentiary hearing that one of the [ineffectiveness] prongs cannot be met, then no purpose would be advanced by holding an evidentiary hearing." *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008), *appeal denied*, 956 A.2d 433 (Pa. 2008).

Here, the PCRA court concluded that Willis failed to establish both the reasonable basis and prejudice prongs of his ineffectiveness claim. First, the court determined Willis failed to demonstrate trial counsel had no reasonable basis for declining the trial court's offer to show a second photo array to the victim, which included a photo of Woodard. Rather, the PCRA court found counsel had an "eminently reasonable strategy," concluding it "would not have been fair to [Willis] to allow the victim to view a photo array with [his] photo in it" since the victim had already identified Willis "on a number of occasions and was in his presence during court proceedings." PCRA Court Opinion, 12/11/2014, at 6. Instead, counsel chose to argue on appeal that "the trial court incorrectly interpreted the law governing the materiality requirement for *Brady* violations." *Id.* The PCRA court emphasized this strategy was at least initially successful, since the Superior Court granted Willis a new trial. *Id.* Second, the PCRA court determined Willis failed to demonstrate he was prejudiced by counsel's actions. Specifically, the court found Willis failed to establish that, had the victim been shown the photo array with Woodard in it, he would have identified Woodard as the gunman.

- 10 -

*Id.* The court also noted that evidence presented during the post-trial hearing "established that Woodard did not resemble the defendant, thereby making it improbable that the complaining witness confused the defendant for Woodard and made a misidentification." *Id.* at 7, *citing* N.T., 2/16/2007, at 12.

We agree with the conclusion of the PCRA court that Willis failed to demonstrate his right to relief. First, as noted by the PCRA court, trial counsel had a reasonable strategic basis for her decision to forgo a second photo array. The victim had already identified Willis on a number of occasions both prior to and during trial, and a second photo array would be superfluous. As such, counsel's decision to focus on the trial court's purported error of law was reasonable. Moreover, we agree that Willis failed to demonstrate he was prejudiced by counsel's omission. Indeed, counsel's failure to accept the trial court's offer to show the victim a second photo array would be prejudicial **only** if the victim identified Woodard, rather than Willis, as his attacker. Therefore, Willis' failure to plead in his PCRA petition that the victim would provide such testimony at a hearing defeats his claim. Accordingly, we find no abuse of discretion on the part of the PCRA court in denying Willis' ineffectiveness claim without first conducting an evidentiary hearing.

Willis also asserts the PCRA court should have conducted an evidentiary hearing, and permitted him to subpoena Peoples "so that the PCRA court could determine, once and for all, whether Peoples is a viable

- 11 -

witness." Willis' Brief at 13. Willis does not aver, however, that Peoples would provide any testimony helpful to his defense.[6] **See id.** at 13-14 ("If the witness Peoples would not be claiming a Fifth Amendment privilege, he would be available to the defense") (emphasis added). We remind Willis "that an evidentiary hearing 'is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness.'" **Roney**, **supra**, 79 A.3d at 605 (citation omitted). Therefore, Willis' failure to establish that Peoples may be a viable witness who could provide exculpatory testimony defeats his claim.

_____

[6] We note that Section 9545(d) requires a petitioner requesting an evidentiary hearing to include "a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony." 42 Pa.C.S. § 9545(d)(1). Although the failure to include a certification is fatal to the claim, this Court has refused to "affirm a PCRA court's decision on the sole basis of inadequate witness certifications where the PCRA court did not provide notice of the alleged defect." **Commonwealth v. Pander**, 100 A.3d 626, 642 (Pa. Super. 2014), *appeal denied*, 109 A.3d 679 (Pa. 2015). Further, when a PCRA court has not provided a petitioner with the opportunity to amend his petition to comply with section 9545(d)(1), and the petitioner's claim "potentially has arguable merit," we have remanded the matter to provide the petitioner the opportunity to comply with the statute and secure an evidentiary hearing. **Commonwealth v. Lippert**, 85 A.3d 1095, 1101 (Pa. Super. 2014), *appeal denied*, 95 A.3d 277 (Pa. 2014). We decline to remand the matter in the present case because (1) it is evident Willis is only speculating that the substance of Peoples' proposed testimony, and (2) as noted *supra*, his claim fails on the merits.

Nevertheless, the PCRA court explained that even assuming Peoples were available to testify, Willis failed to demonstrate Peoples' testimony "would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(vi). The court opined:

Here, the evidence demonstrates clearly that Peoples['] testimony would, on balance, strengthen, rather than weaken, the Commonwealth's case. It is true, … that Peoples stated that he committed the Thomas robbery with Woodard. However, if Peoples were called as a witness for the defense, the remainder of his statement would become admissible to impeach his recollection of that robbery. In particular, Peoples stated that he had committed too many robberies to count, that [Willis] was his accomplice in at least four of these robberies, and that [Willis] possessed the weapon that was used to threaten the robbery victims on three of those four occasions. Peoples covered 17 specific robberies in his statement, all in the area where Peoples lived. Given the extensive number of robberies committed by Peoples, and the strength of Thomas' repeated identification of [Willis] as one of his assailants, it is extremely likely that the jury would have concluded that Peoples was simply confusing one robbery with another. Indeed, the Court cannot imagine any reasonable factfinder, after hearing Peoples' statement, concluding that Thomas was in error, and it was merely a coincidence that Thomas identified [Willis] as the robber when, according to Peoples, [Willis] had committed four other armed robberies with Peoples in the same general area. On balance, the inculpatory effect of identifying [Willis] as the perpetrator of four armed robberies in the area would outweigh the exculpatory effect of Peoples thinking that Woodard was his accomplice on the night Thomas was robbed.

PCRA Court Opinion, 12/11/2014, at 8-9. We find no reason to disagree.

Accordingly, because we conclude Willis has failed to establish the PCRA court abused its discretion in denying his petition without first conducting an evidentiary hearing, we affirm the order on appeal.[7]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/6/2015

_____

[7] To the extent Willis argues the court erred in granting relief "on the papers," we conclude that such claim is waived. Willis' Brief at 14. Willis asserts, in a three-sentence conclusory paragraph, (1) his first claim was "properly briefed" in his "Amended Post Conviction Relief Act Brief[;]" (2) he was entitled to relief "[o]n the papers[;]" and (3) the PCRA court "had no good legal reason for the denial of such relief[.]" **Id.** Therefore, he claims he is entitled to a new trial. This argument, which contains no analysis or citation to authority, is insufficient to warrant relief. **See Commonwealth v. Spotz**, 896 A.2d 1191, 1250 (Pa. 2006) ("[B]oilerplate, undeveloped argument respecting the ineffectiveness of all prior counsel is insufficient to establish an entitlement to post-conviction relief."). Moreover, as we explained with regard to the first claim, Willis has failed to demonstrate trial counsel provided ineffective assistance.