J-S64022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| CHERYL ANN KUNKLE | |
| Appellant | No. 206 EDA 2016 |

Appeal from the PCRA Order Dated December 21, 2015
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001390-2005

BEFORE:  STABILE, J., SOLANO, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED NOVEMBER 04, 2016**

Appellant, Cheryl Ann Kunkle, appeals from the order denying her petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, on the ground that her counsel was ineffective.  We affirm.

In 2007, Appellant was convicted of murdering Benjamin Amato in his Chestnuthill Township, Monroe County home in 2001.  As the PCRA court explained, Appellant and Amato had a child together in 1998, and then ended their relationship and fought over custody of the child.  During the custody dispute in 2001, Appellant accused Amato of harassing her, but Amato was acquitted of those charges.  PCRA Court Opinion, 12/21/15, at 1; *see* N.T. 2/8/07, at 486-88, 493.

_____

[*] Former Justice specially assigned to the Superior Court.

That November, Amato was found dead in his home. The evidence at trial showed that Amato was attacked in his basement, sprayed with "pepper spray," and struck in the head three or four times with a blunt object. *See* N.T. 2/7/07, 175-76, 231-32; 2/9/07, 619; 2/13/07, 960. Appellant was found guilty of committing the murder and sentenced to life imprisonment on the murder charge and a concurrent term of 10 to 23 years on related charges. PCRA Court Opinion, 12/21/15, at 2. Her appeal to this Court was dismissed when her counsel failed to file a brief. *Commonwealth v. Kunkle*, No. 2750 EDA 2007 (Pa. Super., May 12, 2008) (unpublished memorandum).

On July 22, 2008, Appellant filed her first PCRA petition, seeking reinstatement of her direct appellate rights. The PCRA court granted that petition and reinstated Appellant's appellate rights *nunc pro tunc*. This Court then affirmed Appellant's judgment of sentence. *Commonwealth v. Kunkle*, No. 3447 EDA 2008 (Pa. Super., Dec. 2, 2009) (unpublished memorandum), *appeal denied*, 27 A.2d 223 (Pa. 2011).

On August 31, 2012, Appellant filed a second PCRA petition that again sought reinstatement of her direct appellate rights, this time on the ground that her appellate counsel failed properly to preserve certain claims in her direct appeal. Once again, the PCRA court granted Appellant's PCRA petition and reinstated her direct appellate rights *nunc pro tunc*. And once again this Court affirmed the judgment of sentence. *Commonwealth v. Kunkle*, 79 A.3d 1173 (Pa. Super. 2013), *appeal denied*, 114 A.3d 1039 (Pa. 2015).

Appellant filed this PCRA petition, her third, on June 8, 2015.[1] The PCRA court appointed counsel for Appellant, who then filed an Amended PCRA Petition on September 11, 2015. PCRA Court Opinion, 12/21/2015, at 2-3. In her amended petition, Appellant claimed that trial counsel was ineffective for: (1) failing to submit physical evidence for further DNA testing; (2) failing to comply with Pennsylvania Rule of Evidence 609 with regard to impeachment of a Commonwealth witness, Gerald Terlesky; and (3) failing to play for the jury a recording of a voicemail message Appellant

_____

[1] As the PCRA court noted, this third petition was timely filed. **See** PCRA Court Opinion, 12/21/15, at 3. Generally, a PCRA petition must be filed within one year of the date the petitioner's judgment of sentence became final. 42 Pa.C.S. § 9545(b). For purposes of the PCRA, "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). Although Appellant was convicted in 2007, the reinstatements of her direct appeal rights as a result of her first two PCRA petitions meant that her sentence was not final until completion of the reinstated appellate proceedings in 2015. The Supreme Court of Pennsylvania denied Appellant's petition for allowance of appeal in her reinstated direct appeal on April 22, 2015. **Commonwealth v. Kunkle**, 114 A.3d 1039 (Pa. 2015). Appellant did not seek a writ of *certiorari* from the U.S. Supreme Court, and her time for doing so expired on July 21, 2014, 90 days after the Supreme Court of Pennsylvania's decision. **See** U.S. Sup. Ct. R. 13; **Commonwealth v. Miller**, 102 A.3d 988, 993 (Pa. Super. 2014) (where Superior Court affirmed judgment of sentence, Supreme Court of Pennsylvania denied allocatur, and appellant did not seek review in U.S. Supreme Court, judgment of sentence became final when period for seeking review in U.S. Supreme Court expired). Thus, Appellant's judgment of sentence became final on July 21, 2015, and her third PCRA petition, which was filed on June 8, 2015, was timely.

left for Amato before the murder occurred. **See** Amended PCRA Petition, 9/11/15, ¶¶ 13-37.[2]

The PCRA court held an evidentiary hearing on November 2, 2015, and both parties submitted post-hearing briefs. On December 21, 2015, the PCRA court denied Appellant's petition. In an opinion filed that same day, the court explained its rationale: (1) Appellant's claim regarding DNA testing lacked arguable merit because additional testing would not exculpate Appellant, **see** PCRA Court Opinion, 12/21/15, at 5-8; (2) Appellant was not prejudiced by trial counsel's failure to comply with Rule of Evidence 609 because the testimony of the witness at issue was cumulative of other testimony, **see id.** at 8-12; and (3) trial counsel had a reasonable basis for not playing the voicemail recording in which Appellant used a threatening tone of voice towards Amato, **see id.** at 13-16. This appeal followed.

Appellant raises the following issues, as stated:

1. Whether the trial court erred in finding trial counsel effective despite his decision not to submit physical evidence for further DNA testing.

2. Whether the trial court erred in determining Appellant was not prejudiced by trial counsel's failure to properly comply with Pennsylvania Rule of Evidence 609.

---

[2] Appellant raised a fourth claim in her Amended PCRA Petition, but later withdrew that claim. **See** Brief in Support of Defendant's Petition for Post-Conviction Collateral Relief, 12/1/15, at 1 n.1

3. Whether the trial court erred in determining trial counsel's decision to refrain from playing a voicemail recording was reasonable.

Appellant's Brief at 4. We will address these issues in the order presented.

Preliminarily, we recognize that in reviewing the propriety of an order granting or denying PCRA relief, this Court is limited to ascertaining whether the evidence supports the determination of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Payne*, 794 A.2d 902, 905 (Pa. Super. 2002), *appeal denied*, 808 A.2d 571 (Pa. 2002) (table). This Court defers to the findings of the PCRA court, which will not be disturbed unless they have no support in the certified record. *Id.* Furthermore, to be entitled to relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that the conviction or sentence arose from one or more of the errors enumerated in Section 9543(a)(2) of the PCRA. One such error is "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Each of Appellant's three issues challenges the effectiveness of trial counsel under this provision.

The law presumes that counsel was effective, and it is the petitioner's burden to prove the contrary. *Payne*, 794 A.2d at 906. To satisfy this burden, a petitioner must plead and prove that: (1) the underlying claim is of arguable merit; (2) counsel lacked a reasonable basis for taking the actions that are claimed to have been ineffective; and (3) the ineffectiveness

of counsel caused petitioner prejudice. *See Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). "To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012) (quotation marks and citation omitted). If a petitioner fails to prove by a preponderance of the evidence any of the *Pierce* prongs, the court need not address the remaining prongs. *Commonwealth v. Fitzgerald*, 979 A.2d 908, 911 (Pa. Super. 2009), *appeal denied*, 990 A.2d 727 (Pa. 2010) (table).

**The Blood and Hair Samples**

Appellant first claims that trial counsel was ineffective for not submitting physical evidence (two blood samples from Mr. Amato's house and a hair from Amato's shirt) for additional DNA testing, which, Appellant asserts, "would have provided significant exculpatory evidence in that it would have provided evidence to implicate another individual." Appellant's Brief at 17. Prior to trial, the Commonwealth's expert, Gina T. Musante, tested the blood samples and determined that both contained DNA from Amato and an unidentified source. Ms. Musante testified at trial that Appellant was excluded as a contributor of the DNA in both blood samples. *See* Appellant's Brief at 16; N.T. 2/9/07, 662, 664-65. Ms. Musante also testified that the hair was too degraded for her to perform nuclear DNA

testing. However, she acknowledged that mitochondrial DNA testing, which her lab did not perform, could yield results when materials are too degraded for nuclear DNA testing. She did not know if the hair recovered from Mr. Amato's shirt was suitable for mitochondrial DNA testing. *See* Appellant's Brief at 16; N.T. 2/9/07, at 657, 666-67.

Relying upon *Commonwealth v. [Rasheed] Williams*, 899 A.2d 1060 (Pa. 2006), Appellant argues that her claim has arguable merit because further DNA testing would rebut identification testimony offered by the Commonwealth. Appellant's Brief at 14-15. In *Williams*, the Court held that a claim that trial counsel was ineffective for not requesting DNA testing had arguable merit because the resulting evidence could have challenged the victim's identification of the petitioner. *Williams*, 899 A.2d at 1064.[3]

Here, with respect to the blood samples, the PCRA court properly concluded that Appellant's claim lacked arguable merit. *See* PCRA Court Opinion, 12/21/15, at 5. As the PCRA court explained: "DNA testing [of the blood samples] had already excluded [Appellant] as a contributor. Further DNA testing would not give 'exculpatory results' because there was no reason to further exculpate [Appellant] in this regard — the evidence

---

[3] The Court in *Williams* remanded for an evidentiary hearing to address whether counsel had a reasonable basis for not requesting the testing, and it suggested that if Williams could prove that his counsel lacked such a reasonable basis, DNA testing could be conducted. The results of that testing would allow the PCRA court to then address whether the failure to do the testing prejudiced the defendant. *See Williams*, 899 A.2d at 1065-66.

introduced by the Commonwealth already showed that the DNA did not belong to [Appellant]." *Id.* at 7 (citations to the record omitted). The PCRA court also explained why Appellant's reliance on **Williams** was misplaced. In **Williams**, there was no pre-trial testing of the evidence at all. PCRA Court Opinion, 12/21/15, at 7 (citing **Williams**, 899 A.2d at 1062). Here, by contrast, pre-trial testing excluded Appellant as a source of the DNA in the blood samples, making **Williams** inapposite. **See** PCRA Court Opinion, 12/21/15, at 7.

Appellant responds that "[s]ince trial counsel was unable to provide a specific individual who would have motive to murder the victim, evidence of another person's presence at the scene would have significantly strengthened Appellant's theory [that someone else was responsible for the murder] at trial." Appellant's Brief at 17. However, the evidence presented at trial — that the DNA from the blood samples matched the victim and another person who was not Appellant — already demonstrated another person's presence at the scene. Appellant's trial counsel was able to use that evidence to support Appellant's theory. **See** N.T. 2/15/07, at 1127.

Appellant also argues that trial counsel lacked a reasonable basis for not pursuing mitochondrial DNA testing of the hair found on Amato's shirt. Appellant's Brief at 18-20. While the PCRA court's opinion on this issue does not specifically address Appellant's argument regarding the hair, we conclude that a remand for the filing of a supplemental opinion would be an

unnecessary expenditure of judicial resources because the record shows that trial counsel articulated a reasonable basis for his course of action.

The Supreme Court of Pennsylvania recently reiterated the standard we apply in assessing the reasonable basis prong of the ineffectiveness test:

> When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest. As the Commonwealth accurately states, this cannot be a hindsight evaluation of counsel's performance, but requires an examination of "whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [the] defendant's interests."

*Commonwealth v. [Christopher] Williams*, 141 A.3d 440, 463 (Pa. 2016) (citations omitted). Here, at the PCRA hearing, trial counsel testified that mitochondrial DNA testing provides information only as to a maternal line, and that a hair from Appellant or her son, Gregory Rowe, would of course derive from the same maternal line. Trial counsel testified to a concern at the time of trial that additional testing therefore could seem to implicate Appellant indirectly if the hair was from her son, even if the hair was not hers. N.T. 11/2/15, 20-21. This unrebutted testimony demonstrates that counsel had a reasonable basis for not pursuing further testing of the hair. *See [Rasheed] Williams*, 899 A.2d at 1064 ("Not seeking testing that has the potential to convict a client may be a very reasonable strategy; strategy is not measured through hindsight against

alternatives not pursued, so long as trial counsel had a reasonable basis for the decision made").

We therefore hold that the PCRA court did not err in its determination that counsel was not ineffective for not seeking further DNA testing of either the blood or hair evidence at issue here.

**Impeachment of Gerald Terlesky**

Appellant next claims that the PCRA court erred in declining to find trial counsel ineffective for not complying with Pennsylvania Rule of Evidence 609 with respect to Commonwealth witness Gerald Terlesky. Rule 609 provides that a witness may be impeached with evidence of a prior conviction for a crime that involved dishonesty or a false statement. Pa.R.Evid. 609(a). If more than ten years have passed since the conviction or the witness's release from confinement for that conviction, the conviction is admissible only if: "(1) its probative value substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Pa.R.Evid. 609(b).

Terlesky was the work partner of Appellant's father. At Appellant's trial, he testified that Appellant told him that she killed Amato and that she had confessed committing the murder to her boyfriend, Officer Marty Reynolds. Terlesky testified that Appellant told him she had waited at Amato's house for Amato to come home, hit him in the head at the top of a

set of stairs, and then fled out of a side door onto a deck, adding that she said Amato "went down like a pussy." Terlesky stated that Appellant was limping and, when he asked why, Appellant told him she hurt herself when, while fleeing Amato's house, she jumped off Amato's deck and hit Amato's boat. Terlesky also testified that Appellant asked Terlesky to retrieve a pair of shoes, a bat, and gloves that she had discarded in the woods after the killing and to help her burn them. *See Commonwealth v. Kunkle*, 79 A.3d at 1177–78 (summarizing evidence introduced at trial).

In her PCRA petition, Appellant alleged that Terlesky had convictions from 1977 for burglary and theft and that her trial counsel failed to provide notice to the Commonwealth of his intent to use those convictions to impeach Terlesky, as required by Rule 609(b). As a result, she claims, she was precluded from using the convictions to impeach Terlesky. *See* Amended PCRA Petition, 9/11/15, at ¶ 15-17; Appellant's Brief at 23-26.

The PCRA court concluded that Appellant failed to prove that she was prejudiced by trial counsel's noncompliance with Rule 609, explaining that "[e]very pertinent fact Terlesky relayed at trial was also testified to by other witnesses, specifically Gregory Rowe and Marty Reynolds." PCRA Court Opinion, 12/21/15, 8-12. Rowe is Appellant's son. At Appellant's murder trial, Rowe testified that two to three weeks before Amato's death, Appellant had him purchase a can of mace for her, and that Appellant later told him that she killed Amato by spraying him with mace, knocking him down the

stairs, and beating him with a baseball bat until he was dead. **See** 79 A.3d at 1177 (summarizing evidence at trial). Reynolds was Appellant's boyfriend and was a former police officer for the Pocono Mountain Regional Police. Reynolds testified that Appellant confessed to him that she killed Amato, showed Reynolds bruises on the left portion of her thigh, and told Reynolds, "I was there," and "we fought all the way down the steps." **Id.** at 1178. In light of this evidence at trial, the PCRA court found that Appellant failed to prove prejudice. PCRA Court Opinion, 12/21/15, at 12 (citing **Commonwealth v. McLaurin**, 45 A.3d 1131, 1139 (Pa. Super. 2012), **overruled on other grounds by Commonwealth v. Pander**, 100 A.3d 626 (Pa. Super. 2014)).

Appellant responds that the only witness other than Terlesky who provided information regarding physical evidence linking her to the crime was Gregory Rowe, her son, whose own credibility was "seriously questioned" because child pornography charges against him were withdrawn in exchange for his testimony against Appellant. Appellant's Brief at 24.[4] The PCRA court correctly rejected this argument:

> To the extent [Appellant] presently argues Terlesky bolstered Rowe's credibility, the jury was similarly aware of Rowe's *crimen falsi* conviction and the disposition of pending child pornography charges in exchange for his testimony against [Appellant]. The

---

[4] Rowe had also been convicted of unrelated murders in Pike County, as well as shoplifting, and the jury was made aware of those convictions. N.T. 2/8/07, at 404-06.

fact that the jury did not accept defense counsel's interpretation of either of these sets of facts cannot be held against defense counsel as ineffectiveness.

PCRA Court Opinion, 12/21/15, at 11 (citations omitted).

Upon careful review of the record, we agree with the PCRA court's conclusion that even if Terlesky's testimony had been impeached, "the Commonwealth still presented the same pertinent evidence through other witnesses." PCRA Court Opinion, 12/21/15, at 12.[5] Therefore Appellant could not show that, had trial counsel complied with Rule 609, there was a reasonable probability that the outcome of her trial would have been different.

**The Voicemail Message**

In her third and final issue, Appellant claims that trial counsel was ineffective for not playing for the jury a recording of a voicemail message Appellant left for Amato prior to the killing. She argues that this would have dispelled the inference that the recording, referred to but not played by the Commonwealth, contained threats she made to Amato. **See** Appellant's Brief at 26-28. At the PCRA hearing, trial counsel, Brett Riegel, testified that he listened to the recording before trial, and he described it as a "tirade" and "a venting of spleen kind of voice mail message." N.T. 11/2/15, 23. He

---

[5] There was damaging evidence in addition to the testimony of Rowe and Reynolds. For example, two people testified that Appellant tried to hire them to kill Mr. Amato. **See** N.T. 2/9/07, 673-77; 2/12/07, 747-49.

- 13 -

testified that, while it did not contain explicit threats, Appellant's tone could be interpreted as threatening. *Id.* at 24-25. He concluded that, in light of this tone, it would be better for Appellant if the jury did not hear the recording. *Id.* at 25.

As the PCRA court concluded, trial counsel had a reasonable basis for not playing the recording:

> Attorney Riegel's decision not to play the tape for the jury was reasonable. His client was on trial for the murder of Amato and the trial strategy was that someone else had committed the crime. A voicemail from the [Appellant] to Amato in an aggressive tone, regardless of whether said message contained threats, would not have benefited [Appellant], particularly since the Commonwealth alleged she killed Amato out of hatred for him. Moreover, Attorney Riegel used the absence of the tape in evidence to his client's advantage: based on the Commonwealth's theory, they should have seized the opportunity to play a recorded threat from [Appellant] to Amato. However, they did not do so and Attorney Riegel was able to point that absence out to the jury and reasonably argue that it was because there were no threats on the tape. Moreover, this argument was effectively employed without revealing [Appellant's] aggressive tone towards Amato.

PCRA Opinion, 12/21/15, at 15-16 (citations to the record and footnote omitted). We agree and find that the PCRA court correctly rejected Appellant's third ineffectiveness claim.

In summary, the PCRA court correctly concluded that Appellant was not entitled to prevail on any of her three claims of trial counsel ineffectiveness. Accordingly, we affirm the PCRA court's order denying Appellant post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/4/2016