J-S23029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| IDRIS KINARD | : | |
| | : | |
| Appellant | : | No. 2455 EDA 2019 |

Appeal from the PCRA Order Entered July 24, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002209-2010

BEFORE:  NICHOLS, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McCAFFERY, J.:                               Filed: June 25, 2020

Idris Kinard (Appellant) appeals from the order entered in the Philadelphia County Court of Common Pleas, denying his first timely petition under the Post Conviction Relief Act[1] (PCRA).  Appellant avers the PCRA court erred in denying relief on his claims that his trial attorneys were ineffective for not seeking discovery relief when the Commonwealth provided a witness statement on the day of trial, and for not calling that same witness to testify at trial.  We affirm.

The trial court summarized the underlying facts as follows.  On January 14, 2010, at approximately 5:30 p.m., Michael Greene, Sr. and his children, Michael, Jr., and Michelle, exited their house and entered their car.  Michael,

_____

[1] 42 Pa.C.S. §§ 9541-9546.

Sr., saw two men "standing directly across" the street. N.T. Trial, 1/4/11, at 40. One of the men, who was Appellant,

> opened fire on [Michael, Jr.,] and shot in [Michael, Sr.'s] direction numerous times. As [Michael, Jr.,] jumped into the vehicle, [Appellant] continued to fire at the vehicle hitting the rear passenger tire, the passenger side of the vehicle, the rear window, and the driver's side window. . . . None of the gunshots hit [anyone]. Immediately after the shooting, [Appellant] fled the scene down a set of steps in the direction of Abbotsford Avenue. [Appellant] dropped his cell phone during his flight. [N.T. Trial, 1/4/11, at 37-53, 61-68, 95, 101.]

Trial Ct. Op., 5/15/15, at 1-2. Both Michael, Sr., and his daughter Michelle testified at trial that they did not see the person who fired at them. N.T., 1/4/11, at 40, 64. Michael, Jr., was previously arrested as a co-conspirator in a shooting "a couple months" earlier, in which Appellant was shot.[2] *Id.* at 127-28.

> After executing search warrants for [Appellant's] home and his grandmother's home, police recovered a .45 caliber Colt semiautomatic handgun and a .22 caliber revolver, which matched the two .22 caliber bullets recovered from the scene of the shooting. Police recovered [Appellant's] DNA from the trigger of the .22 revolver and the back strap handle of the .45 Colt semiautomatic handgun. Police also recovered an iPhone box with a serial number matching the iPhone found at the scene of the shooting. Police recovered letters and papers addressed to [Appellant], including [Appellant's] identification. [N.T. Trial, 1/5/11, at 32-42, 188-97.]

Trial Ct. Op., 5/15/15, at 1-2.

_____

[2] Michael, Jr., did not testify at Appellant's trial as he invoked his Fifth Amendment right against self-incrimination. N.T., 1/4/11, at 90.

Appellant was charged with multiple offenses. This case proceeded to a jury trial on January 4, 2011.[3] Appellant was represented by Sonte Anthony Reavis, Esquire, and Michael Hall, Esquire (collectively, Trial Counsel).

On the first day of trial, Philadelphia Police Detective Stephen Grace testified that he interviewed a witness, Tiera Bond.[4] N.T., 1/4/11, at 128-29. On cross-examination, Appellant attempted to ask Detective Grace about a statement Bond made to the police concerning a description of the shooter in this matter. *Id.* at 141. However, the trial court sustained the Commonwealth's objection, on hearsay grounds, to anything Bond told the detective. *Id.* Appellant then immediately made an oral motion for a mistrial, arguing the Commonwealth did not provide him with Bond's statement to police until the prior day, and that this late production violated *Brady*.[5] *Id.* at 142-43. Appellant explained that in the statement, Bond described the shooter as "a dark complected person," which was "in direct contradiction to [Appellant's] appearance" of "a light-skinned African American[.]" *Id.*

---

[3] Jury selection was completed on January 3, 2011, and the presentation of evidence began on January 4th.

[4] Bond had identified the shooter in the prior shooting in which Appellant was shot. N.T., 1/4/11, at 129.

[5] *Brady v. Maryland*, 373 U.S. 83 (1963). *See Commonwealth v. Ovalles*, 144 A.3d 957, 965 (Pa. Super. 2016) (prosecutor has obligation to disclose all exculpatory information material to guilt or punishment of accused).

The Commonwealth responded as follows: it "was unaware of [Bond's] statement until" the day prior, and it immediately provided the statement to defense counsel. N.T., 1/4/11, at 144. It was disingenuous for Appellant to imply he did not know of Bond, as they were dating and the Commonwealth's discovery showed they had exchanged "hundreds of" phone calls and text messages. *Id.* at 145. If Appellant "needed more time to investigate yesterday," the Commonwealth would have agreed. *Id.* at 144-45. However, Appellant did not seek a continuance, and he should not be granted a mistrial now "because [he] can't backdoor hearsay through the detective." *Id.* at 145. The trial court denied Appellant's motion for a mistrial. N.T. Trial, 1/5/11, at 8.

Appellant called his mother and two detectives to testify, but did not testify in his own defense. N.T. Trial, 1/6/11, at 22, 38, 48, 61. The jury found Appellant guilty of three counts of attempted murder, three counts of aggravated assault, two violations of the Uniform Firearms Act,[6] and possession of an instrument of crime.[7] On March 11, 2011, the trial court imposed an aggregate sentence of 15 to 30 years' incarceration. Appellant filed a timely counseled post-sentence motion, as well as an apparently

---

[6] 18 Pa.C.S. §§ 901, 2502, 2702(a), 6106(a)(1) (firearms not to be carried without license), 6108 (carrying firearms on public streets in Philadelphia).

[7] 18 Pa.C.S. § 907(a).

- 4 -

untimely supplemental post-sentence motion on September 21, 2011. However, neither the trial docket nor certified record includes any order disposing of either motion.

On May 30, 2012, Appellant filed a *pro se* PCRA petition.[8] The PCRA court appointed counsel, who filed an amended petition. On December 15, 2014, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc*. Appellant appealed to this Court, which affirmed the judgment of sentence on March 3, 2016, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on August 2, 2016. ***Commonwealth v. Kinard***, 120 EDA 205 (unpub. memo.) (Pa. Super. 2016), *appeal denied*, 136 EAL 2016 (Pa. 2016).

Appellant filed a timely *pro se* PCRA petition on August 24, 2016.[9] Privately-retained counsel entered his appearance on February 6, 2017, filed

---

[8] As noted above, it does not appear the trial court disposed of Appellant's post-sentence motions. Were we to deem the first, timely motion denied by operation of law on July 19, 2011, Appellant's judgment of sentence became final, for PCRA purposes, 30 days thereafter, on August 18, 2011. ***See*** 42 Pa.C.S. § 9545(b)(3); Pa.R.Crim.P. 720 (A)(2)(b) (if defendant files timely post-sentence motion, notice of appeal shall be filed within 30 days of entry of order denying motion by operation of law), (B)(3)(a) (if judge fails to decide post-sentence motion within 120 days of filing, motion shall be deemed denied by operation of law). Appellant then generally had one year, or until August 18, 2012, to file a PCRA petition. ***See*** 42 Pa.C.S. § 9545(b)(1). His petition filed on May 30, 2012, was thus timely.

[9] Because Appellant's May 30, 2012, PCRA petition resulted in the reinstatement of his direct appeal rights *nunc pro tunc*, the underlying August 24, 2016, petition is considered his first for PCRA timeliness purposes, and

an amended PCRA petition on September 26, 2017, and filed a memorandum of law on October 4, 2017.  He argued Trial Counsel were ineffective for, *inter alia*, failing to move for a continuance or seek other discovery relief when the Commonwealth provided "the statement of a crucial witness, . . . Bond, the day before trial," and for failing to investigate and call Bond as a witness. Appellant's Amended Petition for Post Conviction Relief, 9/26/17, at 2-3.

On May 31, 2018, the Commonwealth filed a motion to dismiss the petition, and on November 2, 2018, the PCRA court issued Pa.R.Crim.P. 907 notice of intent to dismiss the petition without a hearing.  Appellant filed a counseled response, but the PCRA court dismissed Appellant's petition on July 24, 2019.  Appellant, now represented by Attorney Himebaugh, filed a timely notice of appeal and complied with the court's Pa.R.A.P. 1925(b) order to file a statement of errors complained of on appeal.

_____

thus Appellant was entitled to counsel.  ***See*** Pa.R.Crim.P. 904(C) (when unrepresented defendant satisfies the judge they are unable to afford counsel, judge shall appoint counsel to represent defendant on first PCRA petition); ***Commonwealth v. Karanicolas***, 836 A.2d 940, 945-46 (Pa. Super. 2003). We thus note it was error for the PCRA court to deny Appellant's *pro se* "Motion to Appoint Counsel" on the grounds this was his "second PCRA Petition" and he "was previously appointed counsel on his original PCRA Petition filed on May 30, 2012."  ***See*** Order, 8/30/16 at 1 & n.1.  Nevertheless, privately-retained counsel, Barnaby Wittels, Esquire, entered his appearance on February 6, 2017.

Furthermore, Appellant's notice of appeal was filed by present counsel, Teri Himebaugh, Esquire, although neither the certified record nor the trial docket indicates that Attorney Wittels withdrew his appearance, nor that Attorney Himebaugh entered her appearance.

Appellant presents two issues for our review:

I. Did the PCRA Court err, violating Appellant's rights under the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, Article 1, sec. 9 of the Pennsylvania Constitution and 42 Pa.C.S. § 9545 when it found that trial counsel [were] not ineffective for failing to move for a continuance or seek another remedy under the discovery rules when handed the statement of crucial witness, Tiera Bond, the day before trial?

II. Did the PCRA Court err, violating Appellant's rights under the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, Article 1, sec. 9 of the Pennsylvania Constitution and 42 Pa.C.S. § 9545 when it found that [Appellant] had not established that trial counsel [were] ineffective for failing to investigate and call Tiera Bond as a witness?

Appellant's Brief at 3.

In his first issue, Appellant avers that with respect to the Commonwealth's "eleventh hour disclosure" of Bond's statement to police, Trial Counsel were ineffective for not requesting a continuance in order to interview Bond. Appellant's Brief at 8, 10. Appellant contends his underlying issue has arguable merit because "it is more likely than not, particularly given the Commonwealth's lack of objection, that the Court would have granted that request." *Id.* at 8. He avers there was no reasonable basis for Trial Counsel's failure to request a continuance, as a lawyer has a duty "to investigate **any** witness who may have information concerning his client's guilt or innocence," and furthermore that "it was not objectively reasonable for counsel to request a mistrial[, as c]ounsel had to have known that mistrial as a [discovery remedy] is only granted in particularly egregious cases." *Id.* at 8-9. Finally, Appellant asserts he was prejudiced by counsel's inaction, where Bond told

police "the shooter was someone who was 'shorter and lighter in complexion' than" him, and "[a]ny reasonably experienced criminal defense counsel would know that Bond's statement to detectives likely did not tell the whole story." *Id.* at 10. Appellant contends "a reasonably effective defense counsel would" have asked Bond, for example, "how much shorter the shooter was and . . . what she considered Appellant's skin tone to be." *Id.* at 11.

In his second issue, Appellant avers Trial Counsel were ineffective for failing to interview, investigate, and call Bond as a trial witness. Appellant avers his underlying issue has merit because, where neither Michael, Sr., nor Michelle could see the shooter, Bond's description of the shooter would have been exculpatory and "cast doubt on the DNA evidence that Appellant handled the gun that was fired."[10] *Id.* at 13. Appellant alleges Trial Counsel had no reasonable basis for not interviewing Bond or calling her as a witness, and this "was simply a failure on counsel's part to be prepared." *Id.* at 14, 16. Appellant also asserts he was prejudiced because: (1) "there was no way for

_____

[10] Appellant also refers to a December 29, 2010, letter from the Commonwealth, which advised "that Bond had been observed by police at the scene calling a cell phone which was recovered by police." Appellant's Brief at 12. Appellant contends, without further explanation, that "Bond's recovery and use of the cell phone [was a] relevant and material disputed fact[ ] at . . . trial." *Id.* at 13. This argument was not raised in Appellant's *pro se* or amended PCRA petition, and is thus waived from our review. *See Commonwealth v. Bedell*, 954 A.2d 1209, 1216 (Pa. Super. 2008) (stating claims not raised in PCRA court are waived and cannot be raised for first time on appeal).

counsel to provide [him] with the necessary information to allow him to make an **informed** waiver of his right to call this witness;" and (2) "counsel's failure to call Bond [as a witness] rendered the verdict itself **unreliable**." *Id.* at 16, 18. Appellant reiterates Bond would have been "an independent eyewitness [to] testify that the shooter . . . was 'shorter and lighter in complexion' than" him. *Id.* at 17. No relief is due.

> This Court has stated:
>
> Our review in PCRA matters is guided by the following principles. We consider the record "in the light most favorable to the prevailing party at the PCRA level." This review is limited to the evidence of record and the factual findings of the PCRA court. [A]s long as a PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its ruling. . . .

*Commonwealth v. Pander*, 100 A.3d 626, 630-31 (Pa. Super. 2014) (*en banc*) (citations omitted).

> A claim of ineffective assistance of counsel must establish:
>
> (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." Where the petitioner "fails to plead or meet any elements of the above-cited test, his claim must fail."
>
> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. . . .
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

"Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'

*Id.* at 631 (citations omitted). "'A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.' Counsel is presumed to be effective and the burden is on the appellant to prove otherwise.'" *Bedell*, 954 A.2d at 1211 (citations omitted).

This Court has explained:

"Neglecting to call a witness differs from failing to investigate a witness in a subtle but important way." The failure to investigate "presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation." "It can be unreasonable *per se* to conduct no investigation into known witnesses." Importantly, a petitioner still must demonstrate prejudice. To demonstrate prejudice where the allegation is the failure to interview a witness, the petitioner must show that there is a reasonable probability that the testimony the witness would have provided would have led to a different outcome at trial.

In this respect, a failure to investigate and interview a witness claim overlaps with declining to call a witness since the petitioner must prove: (i) the witness existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the witness was willing to testify; and (v) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial.

*Pander*, 100 A.3d at 638-39 (citations omitted). A PCRA petitioner is not required to provide an affidavit from the proposed witness, and instead, "the certification requirement can be met by an attorney or *pro se* petitioner certifying what the witness will testify regarding." *Id.* at 642 (citations omitted).

- 10 -

With respect to Appellant's claim that Trial Counsel were ineffective for not investigating Bond, neither his PCRA petition nor appellate brief specify any new information that would have been gained from such an investigation. Instead, Appellant relies on Bond's description — that was provided to him at trial — of the shooter. While Appellant speculates that an "effective defense counsel" would have asked Bond different questions from what the police did, his argument remains focused solely on Bond's description of the shooter: "how much shorter the shooter was" and his complexion. *See* Appellant's Brief at 11. Accordingly, we reject Appellant's argument that he was prejudiced by the lack of an investigation, and we deny relief on this issue. *See Pander*, 100 A.3d at 631; *Bedell*, 954 A.2d at 1211.

In denying relief on Appellant's claim that Trial Counsel were ineffective for failing to call Bond to testify at trial, the PCRA court opined that Appellant "offered no proof that Bond was ready, willing and able to testify on" his behalf. PCRA Ct. Op. at 7. We agree. Appellant's *pro se* PCRA petition made no mention of Bond. His counseled amended petition merely stated Trial Counsel failed to call Bond as a witness. Appellant's Amended Petition for Post Conviction Relief at 3. Counsel's memorandum of law correctly cited authority that "[w]hen raising a failure to call a potential witness claim," a petitioner must establish, *inter alia*, "[t]he witness was available to testify." Appellant's Memorandum of Law, 10/4/17, at 9. However, the memorandum failed to

address whether Bond was available and willing to testify. *See Pander*, 100 A.3d at 639.

> On appeal, Appellant argues:
>
> To the extent that the PCRA Court found that that PCRA counsel did not attach an affidavit or verification for Bond showing she was willing and available to testify or what she would testify to Appellant avers that her statement to police serves as a sufficient 'offer of proof' as to what she would testify to if a hearing had been granted. [PCRA Ct. Op. at 7.] As the Court noted, Bond and Appellant knew each other. **There was no reason for Appellant to believe that she would not be willing and available to testify if subpoenaed.** Moreover, when the PCRA petition was filed, it was acceptable for counsel to provide a certification in lieu of a witness affidavit. **This certification would have averred the witness['] willingness to testify.** . . . *Pander*, 100 A. 3d 626 . . . .

Appellant's Brief at 12 n.1 (emphases added).

Appellant's present argument is waived because it was not raised before the PCRA court. *See Bedell*, 954 A.2d at 1216 (emphases added). Indeed, Appellant acknowledges that if he had submitted a certification to the PCRA court, it "**would have** averred [Bond's] willingness to testify." *See* Appellant's Brief at 12 n.1 (emphasis added). Moreover, Appellant's speculation — that "[t]here was no reason . . . to believe that [Bond] would not be willing and available to testify" — would fall short of the requirement that he "must prove" the witness existed and was willing to testify. *See Pander*, 100 A.3d at 639. We additionally note the PCRA court's discussion that Bond's description of the shooter "did not rule out [Appellant] as a possible shooter," and the court's emphasis of the circumstantial evidence

presented at trial, including "Bond's connection to [Appellant and] the matching ballistics and firearm of the same caliber at [Appellant's] home." PCRA Ct. Op. at 6.

Accordingly, we do not disturb the PCRA court's denial of relief on Appellant's claims.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/25/20