J-S24041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KEITH VERNON DAVIS :
:
Appellant : No. 24 WDA 2021

Appeal from the PCRA Order Entered November 25, 2020
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0000474-2017

BEFORE: DUBOW, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: AUGUST 16, 2021**

Appellant, Keith Vernon Davis, appeals from the November 25, 2020,

order entered in the Court of Common Pleas of Cambria County, which denied

Appellant's first petition filed under the Post Conviction Relief Act ("PCRA"),

42 Pa.C.S.A. §§ 9541-9546, following an evidentiary hearing. After a careful

review, we affirm.

This Court has previously set forth the relevant facts and procedural

history, in part, as follows:

In February 2017, investigators from the Johnstown Police
Department interviewed the minor victim, then sixteen years old,
after she reported that she had been physically and sexually
abused by Appellant, her mother's paramour, while her mother
either participated in the abuse or refused to stop Appellant's

_____

[*] Former Justice specially assigned to the Superior Court.

actions. The victim stated that the abuse happened numerous times during the summer and fall months of 2016.

The Commonwealth charged Appellant with eight offenses, including Rape and Aggravated Indecent Assault of a Person less than 16 years of age.[1] The [trial] court appointed Arthur McQuillan, Esq. to represent Appellant.

---

1 The Commonwealth also charged the victim's mother (Appellant's co-defendant) with similar offenses[,] and she ultimately pled guilty pursuant to a plea agreement.

---

At Appellant's preliminary hearing, the victim testified in detail regarding the numerous assaults and other charged offenses. The court held the matter for trial. The Commonwealth filed a Criminal Information on April 24, 2017, alleging that the offenses occurred between June 1, 2016, and October 31, 2016.

In July 2017, the court granted the Commonwealth's request to continue the trial to October 2017 because DNA results would not be available until August 14, 2017.

On September 19, 2017, after learning that the victim's DNA was found on one of Appellant's sex toys and that the victim's mother would be testifying against him at trial, Appellant entered a negotiated guilty plea to one count each of Involuntary Deviate Sexual Intercourse and Aggravated Indecent Assault, with a term of 7½ to 15 years' incarceration.[2] The court conducted a thorough colloquy in which Appellant indicated that "he fully understood what he was doing, that no threats were made to him, that he was satisfied with [plea counsel's] work, and that he was entering his plea voluntarily." N.T., Plea, 9/19/17. The court accepted the guilty plea, ordered a pre-sentence investigation, and scheduled sentencing for December 21, 2017.

---

2 The remaining charges were *nolle prossed*.

---

On September 25, 2017, six days after entering the plea, Appellant filed a *pro se* Motion to Withdraw Guilty Plea and Proceed *Pro Se*, which the [trial] court forwarded to Appellant's counsel. In the filing, Appellant contended that he entered the plea under duress because his attorney told him that his co-defendant/paramour would get no jail time if Appellant pled guilty. He also contended that counsel pressured him into entering the guilty plea by telling him that the Hon. Norman Krumenacker, who was sitting on the bench on September 19, 2017, would be more likely than the Hon. Tamara Bernstein to agree to the negotiated term of 7½ to 15 years' incarceration.

On October 2, 2017, Appellant's plea counsel filed a Motion, asking the court to hold a hearing on Appellant's Motion to Withdraw Guilty Plea and Proceed *Pro Se*.

On October 30, 2017, the [trial] court held a hearing at which Appellant testified. Appellant stated that he entered his guilty plea while he was "disheveled and disoriented" after his attorney told him that he had to agree to plead guilty that day so his co-defendant would get a lenient sentence and she would not have to testify against him. N.T., Plea Withdrawal, 10/30/17, at 6. He also asserted that he has stood by his claims of "innocence these whole eight months regardless of what [counsel] has brought by or told me they have found because I am innocent." *Id.* at 11. In support of this claim of innocence, Appellant asserted that copies of Orders from the Juvenile Dependency Court entered [on] August 17, 2016, October 12, 2016, and October 19, 2016, placed the victim "outside of his house" and would be "favorable to my facing my accuser." *Id.* at 8, 11.

Appellant's plea counsel stated that the negotiated sentence fell "towards the low end" of the standard range of the sentencing guidelines and noted that, pursuant to the applicable statutory provisions, Appellant could have received a term of 20 years' incarceration on each count if found guilty after a trial.[3] *Id.* at 4.

---

3 Appellant had a 2009 conviction for sexual assault against a minor for which he had served a term of incarceration and had undergone sexual offender treatment while in prison.

---

Plea counsel opined that, based on his thirty years of criminal defense practice, he believed "the plea bargain was reasonable." *Id.* at 5. Counsel noted that he had met with Appellant at least five times before Appellant entered the plea and that he had "discussed [the plea] at length with [Appellant]." *Id.* at 4.[4]

---

4 The certified record contains a copy [of] a June 21, 2017, letter to plea counsel from the Cambria County prosecutor extending a formal offer of a guilty plea. The record also includes a letter dated July 18, 2017, from plea counsel to Appellant regarding the co-defendant's cooperation with the Commonwealth, her statement against Appellant, and her willingness to testify against him. Counsel indicated in that letter that "the time to strike a plea bargain might be now before the DNA results come back." *See* Def. Exh. 1 and 2.

---

The Commonwealth argued that the plea came directly after Appellant found out about the victim's DNA evidence on the sex toy and soon after the co-defendant offered to testify against him.

The Commonwealth argued it would be prejudiced by the plea withdrawal because it had stopped further DNA testing to match Appellant's DNA to the sex toys after Appellant pled guilty.

The [trial] court denied the Motion, concluding that, "as a matter of law," Appellant's Motion to Withdraw the Plea "is absolutely frivolous." **Id.** at 16. The [trial] court also denied Appellant's request for Attorney McQuillan's dismissal.

On December 21, 2017, the [trial] court sentenced Appellant to the negotiated aggregate term of 7½ to 15 years' incarceration. On December 26, 2017, Appellant filed a counseled Post-Sentence Motion to Modify Sentence, which the [trial] court denied on January 31, 2018.

Appellant filed a Notice of Appeal on February 6, 2018. Counsel filed a Motion to Withdraw as Counsel on February 8, 2018. On March 5, 2018, the [trial] court granted counsel's Motion and appointed Christy Foreman, Esq. to represent Appellant[.]

**Commonwealth v. Davis**, No. 265 WDA 2018, at *1-5 (Pa.Super. filed 2/19/19) (unpublished memorandum) (some citations to record omitted).

On appeal, Appellant contended the trial court abused its discretion in denying Appellant's pre-sentence request to withdraw his guilty plea. Finding no merit to his claim, this Court affirmed Appellant's judgment of sentence on February 19, 2019. Appellant filed a petition for allowance of appeal, which our Supreme Court denied on August 14, 2019. Appellant did not file a petition for a writ of *certiorari* with the United States Supreme Court.

On or about January 7, 2020, Appellant filed a timely *pro se* PCRA petition, and the PCRA court appointed counsel to represent Appellant. Counsel filed an amended PCRA petition on April 9, 2020, and the PCRA court held evidentiary hearings on May 26, 2020, and September 3, 2020.

By order and opinion entered on November 25, 2020, the PCRA court denied Appellant's PCRA petition. This timely counseled appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issues in his "Statement of Questions Involved" (verbatim):

> I.     Whether the trial court erred in denying Appellant's petition for post-conviction collateral relief averring that his guilty plea was not knowing and voluntary where plea counsel failed to investigate potential alibi witnesses?
>
> II.     Whether the trial court erred in denying Appellant's petition for post-conviction collateral relief averring that his plea counsel had a conflict of interest with the defendant?

Appellant's Brief at 4 (unnecessary capitalization omitted).

In his first issue, Appellant contends guilty plea counsel was ineffective in failing to investigate potential alibi witnesses, Alvin Keith ("Keith") and Vegenzo Peoples ("Peoples"), who were his former paramour's children.[1] Appellant asserts:

> The Appellant testified that he advised his [guilty plea] counsel that he had a potential alibi witness. N.T., May 26, 2020, at 7-12. He further was of the impression that his [guilty plea] counsel did not investigate the potential witnesses. *Id.* at 12, 13. This point which [*sic*] was not refuted by Appellant's [guilty plea] [c]ounsel. N.T., September 3, 2020, at 5.

---

[1] In his appellate brief, Appellant fails to provide the names of the potential alibi witnesses. Rather, he indicates "Appellant testified that he advised his [guilty plea] counsel that he had a potential alibi witness. N.T., May 26, 2020, at 7-12." Appellant's Brief at 10. From his citation to the record, we deduce, as did the PCRA court, that Appellant is referring to Keith and Peoples as his two potential alibi witnesses.

- 5 -

Appellant's Brief at 10.

Our standard of review for an order denying PCRA relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error. *Commonwealth v. Sattazahn*, 597 Pa. 648, 952 A.2d 640, 652 (2008). "We must accord great deference to the findings of the PCRA court, and such findings will not be disturbed unless they have no support in the record." *Commonwealth v. Scassera*, 965 A.2d 247, 249 (Pa.Super. 2009) (citation omitted).

Because there is a presumption that counsel provided effective representation, the defendant bears the burden of proving ineffectiveness. *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282 (2010). To prevail on an ineffective assistance claim, a defendant must establish "(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his [client's] interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.*, *supra*, 10 A.3d at 291 (citations omitted). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Id.*

> A criminal defendant has the right to effective counsel during a plea process as well as during trial. Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice

was within the range of competence demanded of attorneys in criminal cases.

***Commonwealth v. Moser***, 921 A.2d 526, 531 (Pa.Super. 2007) (quotations and quotation marks omitted).

With regard to the failure to investigate potential witnesses, our Pennsylvania Supreme Court has held as follows:

> Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary....The duty to investigate...may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance....
>
> [W]here there is a limited amount of evidence of guilt, it is *per se* unreasonable not to attempt to investigate and interview known eyewitnesses[2] in connection with defenses that hinge on the credibility of other witnesses....
>
> [S]uch a *per se* failing as to performance, of course, does not make out a case of prejudice....

***Commonwealth v. Johnson***, 600 Pa. 329, 966 A.2d 523, 535–36 (2009) (citations omitted) (footnote added).

---

[2] We note this Court has explained that:
> [A] failure to investigate and interview a witness claim overlaps with declining to call a witness since the petitioner must prove: (i) the witness existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the witness was willing to testify; and (v) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Pander***, 100 A.3d 626, 638-39 (Pa.Super. 2014) (*en banc*) (quotation marks and quotation omitted).

To demonstrate prejudice where the allegation is the failure to investigate a witness in the context of a guilty plea, the "appellant must prove he would not have pled guilty and would have achieved a better outcome at trial." *Commonwealth v. Fears*, 624 Pa. 446, 86 A.3d 795, 806-07 (2014) (quotation marks and quotation omitted). "The law does not require that [an] appellant be pleased with the outcome of his decision to enter a plea of guilty[.]" *Commonwealth v. Bedall*, 954 A.2d 1209, 1212 (Pa.Super. 2008) (citation omitted).

In the case *sub judice*, in rejecting Appellant's ineffectiveness claim, the PCRA court relevantly indicated the following:

> [Appellant] entered a guilty plea prior to trial and his decision to do so was based on a change in circumstances of his case. Specifically, prior to entering his plea, [Appellant] learned that: the victim had alleged certain sex toys were used on her by [Appellant]; a number of sex toys were seized during a search of his residence; the victim identified the seized sex toys as the ones used by [Appellant] on her; the victim's DNA was confirmed to be on a sex toy seized from [Appellant's] residence; and [Appellant's] paramour/co-defendant had agreed to testify against him. At the hearing on [Appellant's] Motion to Withdraw Guilty Plea, [Appellant's guilty plea counsel] noted that the forensic finding of the victim's DNA on the sex toys "had no small effect on [Appellant's] decision to plead guilty."
>
> ***
>
> Further, [Appellant] has failed to present any evidence relative to what Keith or Peoples would have told [Appellant's counsel] or how they would have aided in [Appellant's] defense in light of the forensic evidence and the testimony provided by his cooperating co-defendant. [Appellant] merely asserts that they could have aided his defense but his bald assertion, unsupported by any evidence, is insufficient to support a conclusion that [his counsel's] failure to [interview] these witnesses constitutes ineffective assistance of counsel. [At the PCRA hearings,]

[Appellant] did not question [his guilty plea counsel] as to his reasons for not interviewing Keith or Peoples, and [guilty plea counsel's] testimony on this issue was limited. [Counsel] testified that: he spoke with [Appellant] about possible alibis; the alibi defenses did not pan out; he did not recall the names of [Appellant's] possible alibi witnesses but would agree that Keith and Peoples may have been named; and he did not speak to either of them.[3] N.T., 9/3/20, pp. 4-5. [Appellant] did not present any evidence to show that [guilty plea counsel's] action was not reasonable in light of the plea or that speaking with Keith or Peoples would have resulted in a different outcome.

PCRA Court Opinion, filed 11/25/20, at 7-8 (some citations to record omitted) (footnote added).

We agree with the PCRA court's sound reasoning. Appellant has not demonstrated that either Keith or Peoples had exculpatory information and/or evidence that would support Appellant's alibi defense. *See Fears*, *supra*. Moreover, Appellant has not asserted that, had he known guilty plea counsel had not investigated the potential alibi witnesses, he would not have pled guilty. *See id.* Accordingly, Appellant has not demonstrated that guilty plea counsel's failure to investigate Keith and Peoples prejudiced him. *See Johnson*, *supra*. Therefore, Appellant is not entitled to relief on his first claim.

---

[3] In this regard, guilty plea counsel testified Appellant initially told him that he wanted to assert an alibi defense; however, counsel could not remember the names of Appellant's alleged alibi witnesses, although he would not dispute that Keith and Peoples may have been two names given to him by Appellant. N.T., 9/3/20, at 4. In any event, counsel specifically testified that he "gave [Appellant] a calendar and none of [his alibi dates] really panned out." *Id.*

In his next issue, Appellant contends guilty plea counsel was ineffective in failing to disclose to Appellant a potential conflict of interest; namely, that guilty plea counsel's sister was the elected District Attorney of Cambria County during the time of Appellant's prosecution.

When a PCRA petitioner alleges that counsel was ineffective because of a conflict of interest, that petitioner generally cannot prevail "absent a showing of actual prejudice." *Commonwealth v. Small*, 602 Pa. 425, 980 A.2d 549, 563 (2009) (citation omitted). However, prejudice in the ineffective assistance of counsel context will be presumed when "an actual conflict of interest burdens counsel," and when that actual conflict "adversely affected counsel's performance." *Id.* (citations omitted).

Assuming, *arguendo*, that an actual conflict of interest existed due to guilty plea counsel's familial relationship with the District Attorney at the time of Appellant's plea,[4] Appellant has not demonstrated (or even alleged) that

---

[4] It is noteworthy that, as it pertains to whether an actual conflict of interest burdened guilty plea counsel, the PCRA court relevantly indicated the following:

> [A]n actual conflict involves counsel representing a party with an adverse interest to another client and here [guilty plea counsel] did not represent [the District Attorney] while representing [Appellant]. Further, [Appellant] has failed to establish that [guilty plea counsel's] familial relationship to the District Attorney created any conflict of interest. The [trial court] is aware that pursuant to advisory opinions from the Disciplinary Board of the Supreme Court of Pennsylvania and the Pennsylvania Office of Attorney General, [the District Attorney] was "walled off" from any cases in which [guilty plea counsel] was defense counsel.

the conflict adversely affected guilty plea counsel's performance. ***See id.*** As the PCRA court relevantly noted in its opinion, "[Appellant] has not presented evidence to show that [guilty plea counsel's] representation was adversely affected by [a] conflict or directed the [PCRA] court to any portion of the record demonstrating any compromise in [guilty plea counsel's] representation." PCRA Court Opinion, filed 11/25/20, at 10-11 (citations to record omitted). Further, we note Appellant has made no allegation that, had he known of the familial relationship between guilty plea counsel and the District Attorney, he would not have entered his guilty plea or the outcome of the proceedings would have been different. ***See Ali***, ***supra***. Thus, we find the PCRA court did not err in denying Appellant relief.

For all of the foregoing reasons, we affirm.

Affirmed.

---

During [the District Attorney's] tenure, First Assistant District Attorney Heath Long ("Long") was responsible for overseeing any case in which [guilty plea counsel] was counsel of record. Long alone was responsible for making all decisions, including approving plea offers, related to [guilty plea counsel's] cases.

This approach in "walling off" [the District Attorney] is consistent with that taken when a former defense attorney joins a district attorney's office as a prosecutor.

PCRA Court Opinion, filed 11/25/20, at 9.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/16/2021